[Civ. No. 1448.   Third Appellate District.—June 2, 1917.]

CYCLOPS IRON WORKS (a Corporation), Appellant, v. CHICO ICE AND COLD STORAGE COMPANY (a Corporation), Respondent.

CONVERSION—SALE OF GALVANIZED ICE CANS—SUFFICIENCY OF EVIDENCE.—In this action for damages for the alleged unlawful conversion of galvanized ice cans, it is held that the evidence is sufficient to sustain the defendant's contention that the cans were purchased by defendant's predecessor from plaintiff.

ID.—CORPORATION LAW—ACTS OF OFFICERS—AUTHORIZATION BY DIRECTORS.—It is not necessary, in order to bind a corporation, that all acts done by its officers or agents should be specifically authorized by the board of directors, and such authorization entered in its books.

APPEAL from a judgment of the Superior Court of Butte County.   H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

F. J. Castelhun, for Appellant.

Guy R. Kennedy, for Respondent.

CHIPMAN, P. J.—This is an action for damages in the sum of $967.50 for the alleged unlawful conversion of 215 galvanized iron ice cans.   Judgment was rendered in favor of defendant for costs, from which plaintiff appeals.

In 1905, Joseph M. Etienne, Victor Etienne, Jr., and Paul Heilmann formed a copartnership and commenced the business of ice-making under the name of Chico Ice & Cold Storage Company.   Their plant was installed at Chico by the plaintiff corporation, of which Joseph M. Etienne and Victor Etienne, Jr., were, respectively, president and secretary, both being directors thereof and each owning one share of the capital stock of the corporation.   Among other articles shipped to the copartnership by the appellant corporation were 410 cans, 215 of which are the subject of this action.   The claim of appellant is that said cans belonged to it and were stored with the respondent corporation, while the latter claims that they were purchased by its predecessor, the copartnership above mentioned, along with the other apparatus constituting the ice plant.

In December, 1907, Paul Heilmann sold his interest in the partnership to Victor Etienne, Jr., and the defendant corporation was then formed, having the same name as the copartnership which it succeeded.   Both prior and subsequent to said incorporation, A. G. Eames was negotiating for the purchase from the Etiennes of a half interest in the ice plant at Chico, such negotiations being carried on both by correspondence between Eames and Victor Etienne, Jr., and by conversations between them.   The letters between the parties reveal the fact that Eames was desirous, before purchasing an interest in the business, of having something in the nature of an inventory to show just what he would acquire in the way of machinery and appliances.   Respondent's position is that, before the close of the negotiations, he became possessed of such information, and that the sale, when consummated, in-

cluded the cans in dispute. Appellant contends that the evidence does not support the findings of the court in this respect in favor of defendant.

Section 1565 of the Civil Code provides: "The consent of the parties to a contract must be: 1. Free; 2. Mutual; and, 3. Communicated by each to the other"; and section 1625 thereof declares: "The execution of a contract in writing . . . supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

Commencing with a letter from Victor Etienne, Jr., dated San Francisco, December 13, 1907, several communications passed between the parties and some conversations were held by them. The letters written by Mr. Etienne were on .the letter-head of the Cyclops Iron Works, although in one instance those words were erased. There was evidence introduced by plaintiff tending to show that, in conversations preceding the entering into of the contract, Victor Etienne stated to Eames that the cans in questions were not to be included in the property sold. Mr. Eames testified that he replied to this statement that the cans must be included. Appellant also complains of the introduction in evidence by defendant of an inventory containing the item "426 ice cans," claiming that it was never brought to the notice of plaintiff or Victor Etienne.

Under the section of the Civil Code last above quoted, we hold that all prior communications and conversations were merged in the contract finally entered into, and proceed to quote from the letters the portions thereof which, in our opinion, constitute said contract and are the matters upon which the minds of the parties met.

On January 2, 1908, Victor Etienne, Jr., wrote to Mr. Eames a letter containing this statement: "To show you that we are not hide-bound when negotiating a deal of this kind, myself and brother are willing to put this plant in at $15,500.00." To this letter Mr. Eames, on January 3d, replied as follows: "I note that you are willing to put the Chico plant in at a flat valuation of $15,500.00. Even this figure I consider excessive, but I am willing to accept same if I am assured that this amount covers all of the supplies furnished the Chico Ice & Cold Storage Co. by the Cyclops Iron Works and now in the possession of the former concern. There are

to be no future bills rendered the Chico Ice & Cold Storage Co. for electrical supplies or extras of any description." On the following day, Mr. Etienne wrote: "All the bills to be rendered by the Cyclops Iron Works to the Chico Ice & Cold Storage Co. are now in possession of Mr. Heilmann, the only bill for extras is for electrical machinery, etc., the invoice of which Mr. Heilmann has and amounts to $837.52. This makes a total of $16,337.52 to which must be added all of the items as per Mr. Heilmann's books." On January 5th, Mr. Eames wrote, in reply to the last letter, demurring to the items above quoted and stated: "The bill of $15,500.00 was to include all the machinery and supplies of every description furnished the Chico Ice & Cold Storage Co. by the Cyclops Iron Works or yourself, whether electrical or otherwise." Mr. Etienne, on January 8th, wrote as follows: "I will accept on behalf of myself and brother, as a basis of closing up the negotiations between us, your letter of the 5th, which is as follows: 1st. That we are to be allowed $15,500.00 for all the machinery and extras, including the electrical machinery furnished by the Cyclops Iron Works up to date." On the following day, January 9th, Mr. Eames wrote: "I have your favor of the 8th inst. and am pleased to note that we are at last agreed upon the sum which the Cyclops Iron Works is to receive for the machinery and supplies furnished the Chico Ice & Cold Storage Co."

A one-half interest in the property was acquired by Eames in January and the remaining half in March, 1908. Between those dates Eames and the Etiennes were equally interested in the operation of the plant, and during that time no demand was made on Eames or the company for the possession of the cans or for their value. The complaint was filed October 9, 1908.

It seems unnecessary to set forth in detail the testimony in the case. The letters above quoted are sufficient to support the finding of the court that Eames purchased all "electrical supplies and extras of every description." There was testimony given by H. A. Eames, who, from and after February 11, 1908, was superintendent of respondent's plant, that 205 cans were actually used in the manufacture of ice—"195 in the machine and ten extra"; that when he took charge there were about 40 old cans that had been discarded, and that 160 more had been discarded in the three years following; that an

attempt to solder leaky cans was unsuccessful.   A. G. Eames also testified as to leaky and discarded cans.   The court was justified in finding that the 215 cans in question were sold to defendant, and that a number of them had been used by it both before and after the transfer of the plant by the Etiennes.

Appellant contends that there was no evidence that Victor Etienne, Jr., "was conducting the negotiations for the Cyclops Iron Works, nor that the Cyclops Iron Works had held him out as an officer." We think this contention cannot be sustained.

The correspondence above quoted shows that Eames was endeavoring, in case he made the purchase, to secure assurances that the Cyclops Iron Works would have no claim of any character upon the "machinery and supplies of every description." Mr. Etienne refers to "all the bills to be rendered by the Cyclops Iron Works," etc. In another of his letters, dated December 28, 1907, this sentence appears: "I can further state that the books show the true value of the plant, as we have charged for our plants to all of our patrons and under no consideration could I accept the passing on of an outsider of the work turned out by the Cyclops Iron Works."

It is not necessary, in order to bind a corporation, that all acts done by its officers or agents should be specifically authorized by the board of directors and such authorization be entered in its books. In 10 Cyc. 940, referring to *Minor* v. *Mechanics' Bank of Alexandria,* 1 Pet. 46, [7 L. Ed. 47], it is declared: "The officers of a business corporation are to be considered as having the authority to act in accordance with the general usage, practice, and course of the business in which such corporation is engaged; and consequently that their acts, within the scope of such usage, practice, and course of business, will in general bind the corporation in favor of persons having no knowledge of limitations of their authority or who are not in possession of facts attaching such limitations, such as ought to put prudent men upon inquiry." In *Pixley* v. *Western Pac. R. R. Co.,* 33 Cal. 183, [91 Am. Dec. 623], a syllabus reads: "The same presumptions are applicable to corporations as to private persons; hence, though the records of the defendant may have been an entire blank as to any corporate action of the board of directors, . . . it does not follow

that the board did not pass a vote authorizing the president to make the contract; for a vote of the board of directors may be presumed from its acts, though there is no proof of such vote on the corporate record." In *Crowley* v. *Genesee Min. Co.,* 55 Cal. 273, 276, it is said that the authority of the agent to contract "may be conferred by the corporation at a regular meeting of the directors, or by their separate assent, or by any other mode of their doing such acts." The opinion then quotes the following from *Bank of Middlebury* v. *Rutland etc. R. R. Co.,* 30 Vt. 159: "If this were not so, it would lead to very great injustice, for it is notorious that the transaction of the ordinary business of railways, banks, and similar corporations in this country, is without any formal meetings or votes of the board. Hence, there follows a necessity of giving effect to the acts of such corporations, according to the mode in which they choose to allow them to be transacted. If this were not done, it would become impossible to dispose of such contracts with any hope of reaching the truth and justice of the rights and duties of the several parties involved. . . . This is merely holding corporations to such rules of action as they see fit to adopt for their own guidance and the transaction of their business."

In view of the statements contained in the various letters above referred to, considering the fact that those written by Victor Etienne, Jr., were on the letter-head of the Cyclops Iron Works and that he used therein first and third person pronouns, referring, respectively, to himself and the plaintiff corporation; that he testified that he was "actively engaged in the management of the plaintiff corporation," the trial court was not without substantial grounds for its conclusion— that Eames believed that said Etiennes "were acting for and on behalf of the Cyclops Iron Works and that the Cyclops Iron Works was the real owner of the stock of said Chico Ice & Cold Storage Company."

However this may be, we are quite convinced from all the evidence in the case that plaintiff is estopped from repudiating the acts of its officers in the transaction here involved, since they were acting within the general scope of their power and since there is no pretense of fraud on the part of the defendant. (10 Cyc. 1067.)

"Corporations are held to a careful adherence to truth in their dealings with mankind and cannot by representations

or silence involve others in onerous engagements and then defeat the just expectations which their conduct has superinduced.'' (10 Cyc. 1065.)

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 30, 1917.