[Civ. No. 5199. First Appellate District, Division One.—April 15, 1927.]

**J. R. GARDINER, Plaintiff, v. WILHELMINA JOHANNA HOLCOMB, Defendant and Appellant; N. FRANK MORSE, Defendant and Respondent.**

[1] FINDINGS—EVIDENCE—APPEAL.—On the question of conclusiveness of findings of the trial court, the appellate court is precluded from making further inquiry than to ascertain if there is any evidence of a substantial character, and not inherently weak or improbable, which supports the finding, and if such be disclosed the finding should stand irrespective of what evidence there might be opposed to the finding; but as against the positive and direct evidence of a fact, a mere conclusion or general statement will not serve to meet the definition of substantial or any evidence.

[2] NEGOTIABLE INSTRUMENTS—CORPORATION NOTES—PLEDGE AS COLLATERAL — DELIVERY — FINDINGS — EVIDENCE. — In this action in interpleader, which involved as a necessary issue the validity of the pledge of certain promissory notes which had been executed for the purpose of raising money for the benefit of the corporation maker, there was no substantial evidence to support the finding that neither the corporation nor its president ever delivered or authorized the delivery to or use of said notes by the person named as payee therein as collateral security for the purpose of borrowing money for the corporation from the bank with which they were pledged, and that said payee did not have authority to make any assignment or transfer thereof or representation concerning the same for that purpose.

[3] ID.—USE OF CORPORATION NOTES AS COLLATERAL—KNOWLEGE OF PRESIDENT—EVIDENCE.—In such action where the payee of said promissory notes testified positively that, at the time he executed his personal note to the bank and asked the president of the corporation to sign it also, he explained fully to the latter the manner of his handling of the corporation finances and the fact that said note would be secured by certain notes which the corporation had executed to him, and the said personal note recited the fact of said security, and the president of the corporation admitted that he read said personal note before he signed it, his bare statement that he had no knowledge that the notes of the corporation were thus used as collateral was not sufficient to support a finding that he had no notice or knowledge of such use of the corporation notes.

1. See 2 Cal. Jur. 921; 2 R. C. L. 194.

[4] ID. — WIFE AS ACCOMMODATION MAKER — ABSENCE OF CONSIDERA-
TION.—Where the payee named in said corporation notes was
a substantial stockholder in the corporation, as was also the
president of the corporation, and, at the time of giving their
personal note to the bank, and at the request of the bank, the
wife of the payee named in said corporation notes was induced
to join as one of the makers of said personal note and to pledge
certain of her separate property as additional security, but she
received nothing for doing so, and she was not a stockholder
in the corporation, both her husband and the president of the
corporation were the accommodated parties, and she was purely
an accommodation party.

[5] ID.—ACCOMMODATION PAPER—LOAN OF CREDIT—CONSIDERATION.—
Accommodation paper is a bill or note to which the drawer or
maker put his name without consideration for the purpose of
accommodating by a loan of his credit some other person who
is to provide for the bill or note when it falls due; and if
the drawer or maker receives consideration directly from the
payee it is not an accommodation.

[6] ID.—INTENT TO LOAN CREDIT—ATTEMPT TO ACCOMPLISH PERSONAL
OBJECTS.—While a party's intent may be to aid a maker of a note
by lending his credit, if he seeks to accomplish thereby legitimate
objects of his own and not simply to aid the maker the act
is not for accommodation.

[7] ID. — WIFE AS ACCOMMODATION MAKER — PAYMENT BY ACCOM-
MODATED PARTY—CONTRIBUTION.—Where the wife had no interest
either in the corporation notes or as a stockholder of the corpo-
ration, and she was purely a maker of the personal note for
accommodation and for the purpose of lending her credit to the
transaction, she could not be held liable either for contribution
or otherwise upon the payment of said personal note by the
president of the corporation, who signed the note for a valuable
consideration and was one of the accommodated parties.

[8] ID.—PAYMENT BY REAL DEBTOR—RIGHT TO COLLATERAL.—Although
the president of the corporation paid off said personal note
upon which he appeared as a maker, and he was also forced
by the bank to pay off another note of his own, and under
the collateral deposit the separate property of the wife of his
comaker on the former note was liable as security for the latter
note, the payment of said latter note did not entitle him to
said collateral.

---

4.  See 19 Cal. Jur. 881; 3 R. C. L. 1120, 1137.

5.  See 3 R. C. L. 927.

7.  Rights and liabilities of makers and indorsers of accommoda-
tion paper, note, 31 Am. St. Rep. 745.

[9] ID. — MISAPPROPRIATION OF FUNDS BY HUSBAND — LIABILITY OF WIFE—SEPARATE HOLDINGS.—The fact that the payee of the corporation notes, which had been executed for use in raising money for the benefit of the corporation, gave only a part of the moneys raised to the corporation, and the balance was used for the benefit of the community property of himself and his wife, did not serve to render the wife independently and individually liable to the extent of her separate holdings.

[10] ID.—PAYMENT BY ACCOMMODATED PARTY—RIGHT TO COLLATERAL OF ACCOMMODATION MAKER. — Where a person is purely an accommodation maker of a note with the accommodated party, for the accommodation of the latter and without consideration, and pledges collateral for the payment of the debt of the accommodated party, upon the payment of the debt by the accommodated party he cannot retain the benefit of the collateral pledged by the accommodation maker.

---

(1) 4 C. J., p. 883, n. 30; 14a C. J., p. 407, n. 22.   (2) 4 C. J., p. 878, n. 82.   (3) 37 Cyc., p. 391, n. 62.   (4) 8 C. J., p. 220, n. 92. (5) 8 C. J., p. 252, n. 52, p. 255, n. 91.   (6) 8 C. J., p. 257, n. 12. (7) 8 C. J., p. 259, n. 43; 13 C. J., p. 821, n. 7.   (8) 37 Cyc., p. 399, n. 29.   (9) 31 C. J., p. 111, n. 82.

APPEAL from a judgment of the Superior Court of Orange County and from an order denying a new trial. R. Y. Williams, Judge. Reversed.

The facts are stated in the opinion of the court.

Fredericks & Hanna for Appellant.

Bishop & Wellington for Respondent.

PARKER, J., *pro tem.*—This is an appeal by Wilhelmina Johanna Holcomb, defendant, cross-defendant, and cross-complainant, from a judgment rendered against her and in favor of N. Frank Morse, defendant, cross-defendant and cross-complainant, which said judgment awarded to N. Frank Morse the sum of $11,319.49 paid into court by plaintiff, and determined that appellant had no right or claim thereto. The order of the court denying appellant's motion for a new trial is also before us for review.

Plaintiff Gardiner commenced this action in interpleader. He asserted that he held a contract for the purchase of certain lands from defendants Wilhelmina Holcomb and Meta

Zeyn, and one C. E. Holcomb; that, pursuant to the terms of said contract, he was obligated to pay a certain sum of money, and that defendant N. Frank Morse claimed some interest in the contract and the payments due thereunder. The said plaintiff asked that he be permitted to pay into court the sums due and that the various parties defendant litigate their claims thereto. Thereafter it was agreed by all parties that plaintiff pay to the clerk of the superior court all moneys remaining due on the contract and receive his deed for the premises. And it was further agreed and stipulated that of the moneys so paid the defendant Zeyn be paid one-half without further suit and that she be dismissed from the proceedings. Both of these stipulations were executed. The amount remaining was $11,319.49, and the issue in the trial court, and likewise here, is between Wilhelmina Johanna Holcomb and N. Frank Morse. Each of these named claims the fund and they have set up their claims through various pleadings. While one C. E. Holcomb was named as a party to the original contract it was agreed that he had no interest therein and was but a nominal party.

To avoid needless repetition and possible confusion, the defendant Wilhelmina J. Holcomb will be hereinafter referred to simply as Mrs. Holcomb, and the original contract of purchase and sale entered into between the plaintiff Gardiner and the various defendants will be referred to hereinafter as the Gardiner contract. And it may be noted without further repetition that C. E. Holcomb is and was at all of the times embraced within the history of the transactions involved the husband of Mrs. Holcomb.

In order that there may be a clear understanding of the points here for determination it is necessary to detail at some length the facts of the case as presented in the trial court.

C. E. Holcomb and N. Frank Morse, with others, were the directors and owned almost the entire capital stock outstanding of the Pacific Mausoleum Company, a corporation—which will hereafter be referred to as the corporation. This corporation had been engaged in business for some years, and during the years from 1915 to 1919 had considerable difficulty in securing funds to carry on its business or to progress as outlined by its directorate. Much indebtedness

had accrued and the need for funds was acute. Accordingly in April, 1919, at a regular meeting of its stockholders, the corporation decided to borrow the sum of $80,000, and to execute a trust deed upon its property for that amount. On the same date and following the meeting of the stockholders the directors of the corporation held a special meeting and took up this matter of raising funds. It was by them decided, and the decision evidenced by a resolution spread upon the minutes that the corporation proceed to negotiate a loan in the sum of $80,000, and that such loan should be secured by a deed of trust upon certain property of the corporation. From the minutes it appeared that negotiations had been carried on through C. E. Holcomb, a director, and he had arranged that a person named Jacobs and another Lyons should receive a bonus for placing the loan. The resolution provided that the loan of $80,000 should be evidenced by sixteen notes each in the amount of $5,000, and that as security for the total amount the corporation should execute a trust deed to be placed upon certain property in Oakland, California. It was a part of the resolution that said notes and each of them be further secured by the individual indorsements of the directors of the corporation. Accordingly the corporation did execute, through its president and secretary, the sixteen notes each in the amount of $5,000, and upon each note was indorsed the unconditional guarantee of C. E. Holcomb and N. Frank Morse and three other directors. The notes of the corporation were signed by Morse as president and one Pomeroy as secretary, and each note was dated April 5, 1919, and payable twelve months after date. The payee named in the notes was C. E. Holcomb. These notes, executed as aforesaid, were then sent to the corporation's assistant secretary in Oakland for the purpose of consummating the proposed loan through Lyons and Jacobs. The record in the case stops with the statement that the proposed deal did not go through, and the corporation was left where it started. In some manner the sixteen notes were then delivered to Mr. Holcomb. Within a short time the said Holcomb sold one of the notes for its face value, $5,000, and the proceeds of the sale were turned over to the corporation. Thereafter on June 30, 1919, the said C. E. Holcomb borrowed from the First National Bank of Los Angeles the sum of $40,000, and as

security for the payment of the loan made and delivered to
the bank a promissory note, and deposited with the bank as
collateral security for the payment of the said note ten
promissory notes of the corporation, each in the amount of
$5,000, and being ten of the sixteen notes hereinbefore re-
ferred to. In December of 1919 the note of C. E. Holcomb
became due and the same was renewed by him.

In June, 1920, the bank notified Holcomb that it con-
sidered the security for his indebtedness to be inadequate
and demanded that he furnish more collateral or greater
security with the alternative that the bank would proceed
to enforce payment of the note theretofore given.

At this juncture C. E. Holcomb approached Mrs. Holcomb
and requested that she sign the note with him, telling her
that the notes of the corporation were pledged and that no
liability would be fastened upon her as the notes of the cor-
poration had all been indorsed by the directors. Without
consideration of any sort and for the purpose of lending her
credit to the maker, Mrs. Holcomb joined in the execution
of a new note to the bank for the $40,000. As heretofore de-
tailed Mrs. Holcomb was a one-half owner of the Gardiner
contract and of the proceeds thereof. This ownership was
separate in her, having come to her through inheritance and
there being no claim or evidence that the contract or the pro-
ceeds thereof or the property involved therein in any respect
lost its character as separate property or ever was dedicated
to or became merged in the community of Mrs. Holcomb and
C. E. Holcomb, her husband. Upon joining in the note she
pledged therewith the Gardiner contract, by assignment to
the bank, as further security for the note. C. E. Holcomb
likewise solicited Morse to go on this same $40,000 note at
the time of renewal in 1920, explaining to Morse that the
bank required further security under threat of enforced
collection. Thereupon Morse became surety on the note,
and the note with the bank was then as to the bank the note
of C. E. Holcomb, Mrs. Holcomb and Morse.

In May, 1921, Morse paid the note and also another note
that C. E. Holcomb had with the bank in the sum of $6,000,
taking from the bank an assignment of all of the collateral
deposited. Here it may be stated that while the collateral
deposited was security of all of the C. E. Holcomb indebted-
edness, yet the $6,000 note was otherwise secured, and Morse

was paid off on this and that note delivered up and does not enter into the instant controversy. The collateral retained by Morse was the Gardiner contract and the ten corporation notes before described.

On this state of facts Morse contends that he became the owner of the Gardiner contract and entitled to the proceeds thereof in so far as the amount otherwise due Mrs. Holcomb is concerned.

The facts as narrated hereinbefore are the generally admitted facts, leaving out the facts over which a controversy arises. Therefore, before taking up the questions of law applicable it is further necessary to make determination from the findings or otherwise of other material facts.

The court found in finding I that neither the corporation nor N. Frank Morse ever delivered or authorized the delivery to or use of said ten notes by C. E. Holcomb as collateral security for the purpose of borrowing money for the corporation from First National Bank of Los Angeles. Neither did said C. E. Holcomb have authority to make any assignment or transfer thereof or representations concerning the same for that purpose. And in finding II, that neither the bank nor Morse ever had notice of the misuse and appropriation of said ten notes, or of funds borrowed by said C. E. Holcomb, until after the signing and delivery by the parties of the renewal note to the bank. And in finding V, that both Mrs. Holcomb and Morse signed the note in question as cosureties, and neither individually received any property or thing for the placing of their names on said notes.

Appellant attacks these findings and each of them as being unsupported by the evidence.

With respect to finding V it would appear that this is in part a conclusion of law as well as a finding of fact, and possibly a direct finding as to the capacity in which the parties signed might have been omitted. The entire case centers about this finding, and if this one particular finding is sustained it would determine the case. It is a mixed question of law and fact and will be so treated.

We feel it needless, and it would perhaps necessitate much repetition, to take up each of these disputed findings and review the evidence applicable to each. The record discloses that there is little real conflict in the facts, and by

a brief review of the evidence, in addition to what already appears, the conclusion will be manifest.

After the execution of the sixteen notes referred to hereinbefore the evidence is uncontradicted that all of the officers and directors of the corporation knew that the plan proposed had fallen through. They knew that these notes were not going to be used to negotiate any loan in Oakland for the amount of $80,000, and that this scheme of financing was abandoned. This was in April, 1919. Then in the month of May following the corporation received from C. E. Holcomb the sum of $5,000 as proceeds from one of the notes delivered to a new party. The secretary of the corporation somewhat evasively testified that this in itself would not indicate that the original plan was abandoned because it might have been that the parties with whom the original negotiations were planned might have been able to take part only of the amount. On this same point Morse, the president of the corporation, testified practically to the same effect, but added further that the board of directors in regular meeting had authorized the sale of this one $5,000 note. C. E. Holcomb testified that after the original plan had failed he explained to the other directors that the only way money could be obtained was on the personal note of himself secured by these notes as collateral, and that he was given the notes and told to get the money. Morse testified that he was at all times the president of the corporation as well as one of the directors; that the corporation and its directors looked to C. E. Holcomb to finance the building operations and to finance the corporation and to supply money from time to time when necessary, and that previous to the time he (Morse) signed the note in question he knew that ten $5,000 notes had been turned over to C. E. Holcomb to raise money at various banks, and that the minutes of the corporation seem to have called for the ten $5,000 notes to be sold or disposed of at a discount. Morse further testified that the sixteen $5,000 notes were issued for the purpose of taking up the outstanding obligations of the company, and that C. E. Holcomb was about the only one who appeared to be in a position where he might be able to finance the company, and the way he financed it was by his securing loans for the company at the various banks.

Again, Morse testifies that the corporation did deliver the said ten notes to C. E. Holcomb, that the latter did receive the said promissory notes as trustee for said corporation, and did promise that he would negotiate the said notes for the use and benefit of said corporation, and would pay to said corporation all money received by him from his negotiating or selling said notes or any of them, and that the board of directors had authorized Holcomb to sell the notes.

The only evidence to sustain the finding is evidence to the effect that no specific authorization appears in the minute-books of the corporation, coupled with the bald statement of the secretary that he knew of no authorization, and likewise the general statement of Morse that as far as he knew the minutes never showed Holcomb authorized to negotiate or sell the notes other than as in the first resolution stated.

As to the necessity of formal resolution or the requirement as to the minutes showing the fact, reference may be had to *Leitch* v. *Marx,* 21 Cal. App. 208 [131 Pac. 328]; *Cyclops Iron Works* v. *Chico Ice Co.,* 34 Cal. App. 15 [166 Pac. 821].

[1] On the question of the conclusiveness of the findings of the trial court we may concede that the rule of law governing appellate procedure precludes this court from making further inquiry than to ascertain if there is any evidence of a substantial character, and not inherently weak or improbable, which supports the finding, and if such be disclosed the finding should stand irrespective of what evidence there might be opposed to the finding.

However, without regard to the qualifications of the rule, but accepting it in all its strength, there is still the necessity that there be some support for the finding, and that as against the positive and direct evidence of a fact a mere conclusion or general statement will not serve to meet the definition of substantial or any evidence. See *Houghton* v. *Loma Prieta Lumber Co.,* 152 Cal. 574 [14 Ann. Cas. 1159, 14 L. R. A. (N. S.) 913, 93 Pac. 377]; 2 Cal. Jur. 918 et seq.

[2] We conclude that finding I is not supported by the evidence and that there is no substantial evidence to support it.

[3] As to finding II to the effect that Morse never knew that the notes of the corporation were pledged as collateral

when he signed the $40,000 note in question, much the same evidence is applicable to this finding. The finding has its only support in the bare statement of Morse that he had no knowledge of this fact. On this we have the testimony of C. E. Holcomb that he explained this fact to Morse prior to his going on the note; also the testimony of Morse as hereinbefore detailed covering the activities of Holcomb and his connection with the corporate finances and banks. And in addition we have the physical fact of the note itself containing the statement that the notes were held as collateral. From the record before us there is no contention that the fact of the ten notes being collateral did not appear on the face of the note before signature by Morse. Morse admits that he read the note and that he signed it, and then simply adds that he had no knowledge that the notes were part of the collateral. It is inferred that possibly the notes were changed after signature, but there is no evidence even suggesting such a course.

We conclude that finding II is not supported by the evidence. This court will, of course, decline to make findings, but we thus review the findings made preliminary to a discussion of the controlling finding, to the end that the views expressed herein may not be restricted by findings that might conflict therewith.

The main issue in the case goes to the character and liability of the parties signing the $40,000 note in question as between themselves.

[4] The appellant contends that Mrs. Holcomb was purely an accommodation party and that C. E. Holcomb and Morse were the accommodated parties.

Respondent contends that both Mrs. Holcomb and Morse were sureties for C. E. Holcomb, granting possibly that they were both accommodation parties.

At the time Mrs. Holcomb and Morse went on these notes the situation may be thus summarized:

The corporation Pacific Mausoleum Company had issued sixteen notes secured by deed of trust, payable to C. E. Holcomb. The purpose in view was the raising of money to meet the obligations of the company then due and to provide funds to some extent for carrying on the corporation's business. Both C. E. Holcomb and Morse as directors, together with the other directors, individually guaranteed the pay-

ment of each of these notes. While it was planned that the money could be raised from a certain source, the source failed, and the notes were given to C. E. Holcomb to negotiate. Incidentally it might be noted that C. E. Holcomb and Morse each owned approximately 12,000 shares of the stock of the company out of a total of 113,000 shares issued. The total stock owned by the directors guaranteeing the notes was 44,995 shares. Morse knew at all times that C. E. Holcomb was negotiating these notes with various banks and also of his own guarantee thereon. C. E. Holcomb, in procuring the money evidenced by the $40,000 note, had pledged ten of the notes in question, and the bank with whom the pledge was deposited as security was threatening enforced collection and foreclosure of the pledge. With these facts known to Morse, as the evidence discloses, he signed the renewal note and thereafter paid the same.

As to Mrs. Holcomb it is conceded that she received nothing, was not a stockholder in the corporation and comes squarely within the definition of an accommodation party.

The court found as a fact that of the $40,000 realized from these notes the sum of $18,000 was paid to the corporation and that C. E. Holcomb appropriated to his own use the balance. It might be here noted that C. E. Holcomb claimed that the said balance was due him from the corporation for a prior indebtedness. Whatever may have been the true condition, the corporation was not a party to this action, nor was the bank; and surely we cannot anticipate what defenses might have existed as against enforcement of the corporation notes and the guarantee attached to each. The bank holding these ten corporation notes, in the event of default of the promissory note of C. E. Holcomb, for which they were collateral, had an undoubted right of action against the corporation and against the guarantors on the notes; and the finding of the court in this action does not in any way determine the corporation's liability or the liability of the guarantors. And with this right of action the forbearance to proceed was a sufficient, existing, and moving consideration, sufficient to render Morse a maker for value and not an accommodation party or a surety, as far as concerns Mrs. Holcomb.

[5] Accommodation paper is a bill or note to which the drawer or maker has put his name without consideration for

the purpose of accommodating by a loan of his credit some other person who is to provide for the bill or note when it falls due. (Civ. Code, sec. 3110; 8 Cor. Jur., p. 252.)

Accommodation paper is not often issued gratuitously; on the contrary, it is usually in consideration of benefits expressly or impliedly promised rather than as a favor to the maker of the note. If a maker receives consideration directly from the payee it is not an accommodation. [6] While a party's intent may be to aid a maker of a note by lending his credit, if he seeks to accomplish thereby legitimate objects of his own and not simply to aid the maker the act is not for accommodation (*Thompson* v. *Whitney*, 17 Hawaii, 107 et seq.).

Accommodation paper means commercial paper made, accepted, or indorsed for the benefit of another, without consideration. It is made for the purpose of a loan of credit to the person accommodated. A loan of credit is the universal test of the character of the paper (*In re Quality Shop*, 205 Fed. 266).

From these references to the general characteristics of accommodation paper it is clear that Morse was not an accommodation maker on the note here involved. It seems hardly to be questioned that he did receive a valuable consideration equally with C. E. Holcomb. In support of this conclusion the following cases are cited: *Cushing* v. *Gore*, 15 Mass. 68; *Interstate Trust Co.* v. *Irwin*, 138 La. 325 [70 South. 313]; *Reed* v. *Pueblo First Nat. Bank*, 23 Colo. 380 [48 Pac. 507]; *Backer* v. *Grummett*, 39 Cal. App. 101 [178 Pac. 312]. Indeed, it seems so obvious from a mere recital of the facts that Morse was merely substituting his own obligation as well as that of C. E. Holcomb.

[7] Such being the situation, and it being conceded that Mrs. Holcomb had no interest either in the corporation note or as a stockholder of the corporation, and being purely an indorser for accommodation and for the purpose of lending her credit to the transaction, she cannot be held liable either for contribution or otherwise.

The principle underlying contribution is purely equitable in origin and application; and it is well-settled law that one who has paid no more than what he in equity and good conscience might have paid cannot require proportionate contribution under the facts here (*Backer* v. *Grummett*, 39

Cal. App. 101 [178 Pac. 312]; *American Bonding Co.* v. *National Mechanics' Bank,* 97 Md. 598 [99 Am. St. Rep. 466, 55 Atl. 395]; *Allen* v. *Peïrrine,* 103 Ky. 516 [45 S. W. 500]; *Brown* v. *Sheldon State Bank,* 139 Iowa, 83 [117, N. W. 289]).

In *Williams* v. *Hasshagen,* 166 Cal. 386 [137 Pac. 9], is announced the general doctrine likewise applicable to the case at bar, that the party for whose accommodation the paper was made may not sue the accommodation party.

Mrs. Holcomb being purely an accommodation party, and Morse having signed the note for a valuable consideration, and being accommodated within the rules governing, it follows that he could seek no recovery from her. It may be here added that the trial court made a finding of fact that it did not appear that Pacific Mausoleum Company was not able to pay all the notes.

There are other points raised by appellant which it becomes unnecessary to discuss.

However, respondent makes various contentions to support the judgment, and we may briefly dispose thereof.

[8] It appears that when Morse paid off the $40,000 note the bank held also another note of Morse in the amount of $6,000, and that under the collateral deposit the Gardiner contract was liable as security for this note. Before the bank would release the collateral Morse was obliged to pay off the $6,000 note. Respondent urges that he holds the Gardiner contract thus received by him and is entitled to the proceeds thereof irrespective of the other note.

There are two answers to this. The lesser note has been discharged and the collateral attached thereto has been released and the note delivered up to the maker; also the amount remaining due thereon was only $2,000; and even if unpaid the liability of the Gardiner contract would still be far less than the amount here in controversy.

[9] Another point urged by respondent is based upon a finding of the court that of the $40,000 secured by C. E. Holcomb, the sum of $18,000 was given to the corporation, and that the remaining $22,000 went into and was used for the benefit of the community property of himself and Mrs. Holcomb, and that at the time C. E. Holcomb borrowed the said sum of $40,000 he was a director of the Pacific Mausoleum Company, and that at all times subsequent thereto the

said C. E. Holcomb held and now holds stock in said company as the community property of himself and Mrs. Holcomb.

Little aid can be given respondent from this finding, even conceding that it is supported in fact. It is conceded, however, by all sides that the only support of the finding is the presumption that all property not owned by either spouse at the time of marriage, or subsequently acquired by gift, devise, bequest, or inheritance, etc., is community property. We are not going to review the history of the community idea at this time. The supreme court in the recent case of *Stewart* v. *Stewart,* 199 Cal. 318 [249 Pac. 197], has settled and determined just what the rights of the wife are in respect to the community; and the law as announced there precludes consideration of the liability of Mrs. Holcomb under the finding here discussed. It is apparent that duties and rights are correlative; and if it were the law that the separate property of the wife were liable in every transaction wherein a presumption arose that the community property may have been benefited, then the doctrine of *Stewart* v. *Stewart* needs instant revision. To hold that, because C. E. Holcomb appropriated money of the corporation, necessarily it became a part of the community, and that, therefore, it follows that the wife is independently and individually liable to the extent of her separate holdings, would be establishing a new principle of law, and one destructive of the wife's capacity to hold separate property at all.

If the respondent seeks to make Mrs. Holcomb a principal of the note in question by reason of the fact that her husband was a director and stockholder, and that the stock was community property, then a complete new theory is interjected into the case; because if Mrs. Holcomb becomes a principal by reason of her community interest in the stock it surely follows that Morse would be a principal by reason of his individual interest. It then follows that the note has been discharged, and the present action fails.

[10] Finally, respondent contends that he is not seeking any recovery from Mrs. Holcomb by way of contribution, but that he stands upon the claim that he has paid the note as surety and is entitled to the collateral, regardless of the status of the one who owned the collateral or who might have pledged the same. In other words, his con-

tention is that, regardless of the fact that Mrs. Holcomb may be an accommodation party, and conceding the law to be that the party accommodated cannot recover against the accommodation party, nevertheless the respondent can retain the collateral that Mrs. Holcomb pledged by way of further accommodation. Illustrating, if A is purely an accommodation maker with B for the accommodation of B and without consideration, and pledges collateral for the payment of B's debt, then B upon payment can retain the benefit of A's collateral. We deem this contention unworthy of discussion.

Many other questions have arisen out of the facts of this case and have been urged by the respective parties. We deem it unnecessary to discuss the same, as all of them hinge upon the determinations here made.

For the reasons given the judgment is reversed and likewise the order denying appellant's motion for a new trial.

Tyler, P. J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 13, 1927.