[Civ. No. 23585.   Second Dist., Div. One.   Dec. 29, 1959.]

ANSON C. MOORE, Respondent, v. GEORGE H. PHILLIPS et al., Defendants; GELOM CONSTRUCTION COMPANY (a Corporation) et al., Appellants.

Richard W. Robertson for Appellants.

Price, Postel & Parma, Francis Price, Jr., H. Clarke Gaines and Lilian M. Fish for Respondent.

FOURT, J.—This is an appeal from a judgment in favor of a broker (plaintiff) for earned commissions.

This action was for a balance due in the sum of $14,839.50 arising from a contract or agreement dated November 3, 1955. It was stipulated that recovery from any party would be $14,839.50, the sum of $4,000 having been paid upon the total commissions of $18,839.50. The agreement of November 3 is as follows:

"COMMISSION AGREEMENT

"It is agreed between the undersigned that Anson C. Moore will arrange for the construction financing for 112 lots in Tract . . ., located in Santa Barbara County, State of California. That this financing is to be arranged with Allied Building Credits of 2853 West Seventh Street, Los Angeles, California, on terms agreeable to both lender and borrower.

"In return for arranging this financing, George Phillips and Associates agree to pay Anson C. Moore one percent (1%) of the total amount of the Certificate of Reasonable Value as issued by the Veterans Administration. It is agreed that the commission will be paid at the time the first draw is made on the construction funds.

GEORGE PHILLIPS AND ASSOCIATES
/s/ George H. Phillips

/s/ Anson C. Moore
ANSON C. MOORE
November 3, 1955.''

Plaintiff alleged that the defendants became indebted to him pursuant to the above agreement for commissions earned in connection with loans obtained by plaintiff for construction financing of defendants' subdivision known as Braemar Park in Santa Barbara County.

A résumé of the facts is as follows:

The defendants were engaged in the business of subdividing land and did develop the subdivision known as Braemar Park in Santa Barbara County with funds loaned by Allied Building Credits to the four appellant-corporations. The plaintiff made the initial contact with and commenced negotiations with Allied Building Credits for the financing of the subdivision. George Phillips, or George H. Phillips was introduced to Allied Building Credits by the plaintiff.

It was established by the witness, Petersen, who was in charge of the loans made by Allied Building Credits, that George Phillips represented the four appellant-corporations in the negotiations for the loans which were made. However, it was not until 1956 that the plaintiff learned that Mr. Phillips was an officer in these corporations.

On November 28, 1955, the minutes of the P-K Construction Corporation reflected that the president (Phillips) and secretary were specifically authorized to "execute and deliver any other agreement and documents as may be necessary or convenient to consummate said loan upon such terms and conditions as said officers may deem appropriate in order to secure said loan." The loan referred to was the loan from Allied Building Credits.

The construction of the Braemar Park tract was broken down into two groups. The commission agreement was based upon a percentage of whatever was loaned and consequently the commission was also broken down into two separate figures. Two letters sent by the plaintiff with reference to the commissions are as follows:

"December 19, 1955

"Mr. George Phillips and Associates
8592 Washington Boulevard
Culver City, California

"Dear George:

"In accordance with our agreement in regards to the payment of the commission to me for obtaining financing for your tract in Santa Barbara, California, it is agreed that the commission of -$18,839.50- will be paid as follows:
            $9,800.00 GHP ACM

"$5,000.00 immediately—or as soon as you are able to collect it from William Fleming of San Bernardino.

"$1,000.00 as of April 1, 1956, May, 1956, and June 1, 1956 respectively and the balance to be paid on or before July 15, 1956.

"Will you please sign your approval on the lower left hand corner and return one copy to me.

Very truly yours,
(Signed)
Anson C. Moore
Approved
(Signed) George H. Phillips."

"April 2, 1956

"George Phillips Construction Co.
8592 Washington Boulevard
Culver City, California

Attention: Mr. George Phillips

"Gentlemen:

"In accordance with our agreement, dated November 3, 1955, since the lender, Allied Building Credits, Inc., has approved the loans on the second group of houses that the commission due me is as follows:

"$9,800.00 due on or before August 15, 1956. Of this amount $4,000.00 was paid as of February 13, 1956. This commission to apply on the first group of loans. $9,039.50 due on or before August 15, 1956, on the second group of houses.

"Will you please signify your approval on the lower left hand corner and return one copy for me.

Very truly yours,
ANSON C. MOORE
ACM :g

Approved: (Signed) George H. Phillips."

George H. Phillips supplied the figures to be used for the amount of the commission earned. The name "George H. Phillips and Associates" and the address, and the $4,000.00 paid upon the commission were received by plaintiff from Mr. Phillips. The address of George H. Phillips and Associates was the same as the address for all of the four appellant-corporations.

There was evidence that it was customary for a promoter to operate in the name of a nominee or to take property in his name and that of a nominee and to set up corporations.

The real property upon which the Braemar Park subdivision was constructed was deeded to the four appellant-corporations. George H. Phillips executed deeds of trust on the real property of the tract covered by these grant deeds as president of three and as secretary of the fourth corporation. Phillips testified that he had over-all management of the development of Braemar Tract. The minute books of the four corporations, together with certain loose minutes, were introduced in evidence.

The four appellant-corporations are the corporations which

owned, controlled, developed and stood to profit from the Braemar Park subdivision, which was developed through the financing arranged by the plaintiff.

Based upon these and other facts the judgment of the trial court was that each of the defendants was liable to the plaintiff for the balance due upon the commission.

The judge made a "Memorandum of Opinion" wherein, among other things, it was set forth:

"Counsel for some of the defendants has tried to inject the question of failure of consideration but I am convinced, from the evidence, and the supporting exhibits, that the agreement provided for *construction financing* (italics mine) and this the plaintiff secured. That the proposed subdivision was erected with ABC funds secured through the plaintiff's efforts is ample proof of this fact. Had the agreement been for some type of financing other than construction, it may be well inferred that the question would have arisen long before it did. Had the terms not been agreeable to both lender and borrower the tract would never have been completed under loans provided by ABC.

". . . Without reviewing the evidence before the Court, I am convinced that I can come to no other conclusion than that GEORGE H. PHILLIPS CONSTRUCTION CO., GEORGE PHILLIPS CONSTRUCTION COMPANY, and GEORGE H. PHILLIPS are one and the same and since he contracted to pay the plaintiff in the event the latter secured the required financing in accordance with the contract and evidence herein he is liable and therefore judgment must be rendered as against GEORGE H. PHILLIPS, individually.

". . . . . . . . . . . .

"As one reviews all the evidence and exhibits before the Court it becomes apparent that certain names both individual and corporate have been issued in the development of the Braemar tract from its very inception. However, their operations are so interwoven that it is impossible to separate them one from the other. The defendant Phillips was at all times herein pertinent an officer of the defendant corporations and I can come to no other conclusion than that he acted upon their behalf and in their interest and that they have received great benefit therefrom.

"Time does not permit a review of all of the evidence upon which the Court is basing its decision except to say, that in my opinion the evidence reveals by a great preponderance that the defendant Phillips in acting as he did, did so upon the

specific authority of the defendant corporations after November 28, 1955 and that his actions and conduct on their behalf theretofore have been ratified. A review of the various minutes which have been introduced as exhibits herein amply substantiate this conclusion.''

The court made a finding of fact numbered IX which reads as follows:

''That in the development and financing of said subdivision known as Braemar Park there were used certain names both individual and corporate; that the operations of said individuals and corporations were so interwoven that such operations cannot be separated one from the other; and that the defendant George H. Phillips, also known as George Phillips, at all times mentioned in the complaint acted upon the behalf of said defendant corporations, and each of them, and in their interest in the development and financing of said Braemar Park subdivision, and said defendant corporations have received great benefit therefrom, and that in connection with said development and financing said defendant George H. Phillips, also known as George Phillips, acted upon the specific authority of the defendant corporations after November 28, 1955, and that his said actions and conduct in this regard on their behalf theretofore were ratified.''

The appellants' attack upon the judgment is presented in the form of an attack upon the statements made in the memorandum of opinion ''to which the findings of fact are substantially similar.'' Appellants then argue that the court must have determined their liability upon one or more of the following erroneous bases:

(1) Upon the doctrine of ''Corporation sole'' or ''alter ego'';

(2) Upon the theory that any officer of a corporation might bind it to a contract;

(3) That receipt of the benefits of a contract without more is a ratification thereof;

(4) That ''defendant Phillips in acting as he did, did so upon the specific authority of the defendant corporation after November 28, 1955'';

(5) That ''the actions and conduct of Phillips on behalf of appellants prior to November 28, 1955 were ratified by appellants.''

We must view the evidence in the light most favorable to the respondent, giving him the benefit of all presumptions and all legitimate inferences which may be drawn from

the evidence in support of the finding. ▮▮ The conclusions of the trier of fact will not be disturbed if it is supported by substantial evidence. (*H. A. S. Loan Service, Inc.* v. *McColgan,* 21 Cal.2d 518 [133 P.2d 391, 145 A.L.R. 349].)

▮▮ The fact that the plaintiff may not have known at the time of the agreement with Phillips that the loan to be obtained from the Allied Building Credits Company was to be made to the four appellant-corporations does not necessarily prejudice his cause. The concept of "undisclosed principal" is firmly established. ▮▮ A totally undisclosed principal, as well as one whose existence or identity is known to the third person, may ratify acts done on its behalf. (*Schnier* v. *Percival,* 83 Cal.App. 470 [256 P. 1109]; *Cowan* v. *Tremble,* 111 Cal.App. 458 [296 P. 91]; *Moynough* v. *Empress Gold Mining Co., Ltd.,* 6 Cal.App.2d 674 [45 P.2d 659].)

▮▮ In order to promote the corporate interests, a corporation can act only through its agents, and in its ordinary course of business its president, as corporate representative, may execute contracts to bind the corporation. (*Grummnet* v. *Fresno Glazed Cement Pipe Co.,* 181 Cal. 509 [185 P. 388]; *Herring* v. *Fisher,* 110 Cal.App.2d 322, 330 [242 P.2d 963].)

▮▮ The executive officer of a corporation is more than an agent. He acts and speaks for the corporation in furthering its express objects. (*Jeppi* v. *Brockman Holding Co.,* 34 Cal.2d 11, 16 [206 P.2d 847, 9 A.L.R.2d 1297].) Mr. Phillips had overall management of the development of Braemar Tract. ▮▮ As pointed out by the court in *Snyder* v. *Security-First National Bank,* 31 Cal.App.2d 660, 664 [88 P.2d 760]:

"It is well established that a corporation is not chargeable with the knowledge of an officer or agent who has no authority to bind the corporation (*Bourne* v. *Root,* 125 Cal.App. 461, 464 [13 P.2d 1066]), but the contrary is also regarded as the general rule, namely, that notice to an officer or authorized agent of a corporation is notice to the corporation. (1 Cal.Jur. p. 848; *Jefferson* v. *Hewitt,* 103 Cal. 624, 629 [37 P. 638].) . . . ▮▮ That a corporation can have knowledge only through its officers and agents is elementary."

▮▮ The articles of incorporation of all four corporations stated the primary purpose of each to be "to survey, subdivide, plat, improve and develop lands for purpose of sale or otherwise, and to do and perform all things lawful for the development and improvement of the same for residence, trade, business or industry."

Appellants do not contest the authority of Mr. Phil-

lips to secure the necessary capital from Allied Buildings Credits, but they do contest the authority of Mr. Phillips to enter into the commission agreement, executed in the anteroom of Allied Building Credits Company even though it was only by virtue of plaintiff's labors that the needed loan was consummated. The great preponderance of the evidence points unerringly to the fact that Phillips managed and controlled the four corporations and each was completely under his domination, direction and control.

It is implicit from the record that in fact Mr. Phillips was one and the same as the four corporations. As of November 28, 1955, he had specific authority to arrange for the financing of the subdivision. On November 28, 1955, the minutes of the P-K Construction Corporation reflect that the president (Phillips) and the secretary were specifically authorized to "execute and deliver any other agreements and documents as may be necessary or convenient to consummate said loan upon such terms and conditions as said officers may deem appropriate in order to secure said loan." This was about three weeks after Phillips had executed the agreement of November 3, 1955 and it was prior to the writings of December 19, 1955 and April 2, 1956, both of which fix the amounts due to plaintiff for arranging the very financing referred to in these minutes. The other three corporate defendants also obtained loans from Allied Building Credits on the same terms as did the P-K Corporation. The property involved was a part of the *same* subdivision; the development involved the *same*; the *same* four directors in combination of three; the *same* man (Mr. Phillips) running the affairs of all the corporations; the loan as a result of the *same* efforts by plaintiff. The trial court had a right to infer from all of the records and evidence in this case that the other three corporate defendants passed a similar resolution authorizing Phillips, as one of its officers, to do and perform the same acts as did the P-K Corporation in connection with this financing. Yet, even if the other three corporations did not formally pass similar resolutions, this would not be fatal to the plaintiff's claim.

It is not necessary, in order to bind a corporation, that all acts done by its officers should be specifically authorized by the board of directors, and such authorization entered in its books. (*Cyclops Iron Works* v. *Chico Ice & Cold Storage Co.*, 34 Cal.App. 10 [166 P. 821].)

It was not an unreasonable inference to draw that the conduct of the appellants constituted specific authorization

for the subsequent acts and a ratification of the prior acts of Phillips in his agreement with Moore. Clearly, the evidence was sufficient to show that the agreement was executed by the president pursuant to his implied authority. ▋ In *Memorial Hospital Association of Stanislaus County* v. *Pacific Grape Products Co.*, 45 Cal.2d 634, 637 [290 P.2d 481, 50 A.L.R.2d 442], it was stated:

"Where the president of a corporation is also its general manager, having the power to superintend and conduct its business, he has implied authority to make any contract or do any other act appropriate in the ordinary course of its business. In such case, his powers are greater than he would have as president alone. (19 C.J.S. § 1001, p. 466; Fletcher, Cyclopedia of Corporations [Perm. ed. 1931], vol. 2, §§ 553, 594.)"

We have in effect referred to and examined all of the contentions of appellants and we find no merit thereto.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.