[Civ. No. 8149. Third Dist. Feb. 2, 1953.]

BEAR CREEK COMPANY (a Corporation), Respondent, v. ALFRED M. JAMES et al., Appellants.

Linneman, Burgess, Telles & Van Atta for Appellants.

C. Ray Robinson, W. W. Gudmundson and William B. Boone for Respondent.

SCHOTTKY, J.—Defendants, James and Buckley, operating as copartners, were engaged in the business of packing and shipping melons and other perishable crops. Besides their packing and shipping operations they also financed the growing of these crops in the area. One Frank Lenci was one of the growers so financed during 1949. On June 3, 1949, plaintiff filed an action against Lenci on two promissory notes totaling over $4,000; attachment in the action was filed on August 12, 1949, and served on defendants on August 15, 1949. Defendants' bookkeeper advised the constable that $1,300 was owing Lenci by defendants for the sale of melons, and the constable showed that figure in his answer. Judgment for plaintiff against Lenci, in the sum of $4,671.50, was entered on November 9, 1949. When the constable attempted to levy

execution on the judgment, on November 15, 1949, defendants asserted that Lenci was indebted to them and that there were no monies due Lenci from defendants. Plaintiff then brought action as judgment creditor against defendants as garnishees, for conversion of the property of the judgment debtor. Defendants' answer traversed the allegation that they were indebted to Lenci, either at the time of attachment or at any time subsequent thereto.

At the trial of this action, plaintiff's only witness was the constable, who testified to serving the writ of attachment on August 15, 1949, and getting the information from defendants' bookkeeper that they owed Lenci a balance of $1,300; he also testified that when he attempted to serve the writ of execution three months later, on November 15, 1949, defendant Buckley stated that Lenci had no money coming. On cross-examination, it was brought out that he had served the original writ of attachment rather late in the afternoon when defendants' office was fairly busy, and that he did not at that time ask whether defendants had any offsets nor was there any discussion whatever as to offsets. Plaintiff presented no further evidence, but rested after this single witness. Defendants put Mrs. Jewett, the bookkeeper, on, and she testified that the original writ was served during the latter part of the afternoon on August 15, 1949, when the office was quite busy; she further testified that she totaled up the accounts receivable for Lenci's account and then subtracted the packing, loading, harvesting and commissions before arriving at the figure of $1,300, although nothing was said at the time about any other expenses or advances which defendants had made to Lenci. At this point, defendants offered to prove the true status of Lenci's account on August 15, 1949, as showing a deficit, rather than a credit, because of advances made during the growing season, which advances had not been taken into consideration along with the harvesting costs when the $1,300 figure was arrived at. After considerable debate on the matter plaintiff's objection to this offer was sustained, and defendants were not permitted to show the deficit. Defendants then had brief testimony by each of the partners, which only reasserted their position that the figure given the constable merely represented what Lenci had coming from the sale of melons, rather than being a complete accounting between them. On cross-examination, defendant James admitted that he knew of the offsets at the time of original service, and, though he was in the office at the time, he did not volunteer that information

to the constable; there was also some byplay between James and plaintiff's counsel in that James asserted he was unfamiliar with attachment proceedings except for employees' salaries.

The court, sitting without a jury, gave judgment for plaintiff on the theory, as shown by its memorandum opinion, that defendants' bookkeeper, who was familiar with defendants' books and accounts, provided the constable with the figure of $1,300 as the balance due Lenci, and that both waiver and estoppel were effective to prevent defendants from showing that any other setoffs were in existence at the time of the original attachment. Extensive findings of fact were made, including findings to the effect that defendants knew they had been served with a writ of attachment and what the purpose, function and effect of such a writ was; that on August 15, 1949, they stated and represented to the constable that they held funds due to Lenci in the amount of $1,300, and that at that time they had full knowledge of all the facts surrounding their dealings with Lenci without consulting their books, that they did in fact check all their books and records and then determined, after deducting all setoffs and all other claims they had against Lenci, that they owed him a balance of $1,300, which they reported to the constable; that defendants did not at that time assert any claim of offset in any amount against the $1,300; that defendants at that time had full and complete knowledge of any right of setoff whatever against the $1,300; that all offsets were considered before defendants told the constable the balance due Lenci was $1,300; that defendants intended and believed that plaintiff would act in reliance upon their return to the constable; that plaintiff justifiably relied upon defendants' statements, to its detriment in that it did nothing further to protect itself; that the levy of execution was returned unsatisfied on November 15, 1949; that defendants appeared, on December 26, 1950, in supplementary proceedings in aid of the execution, which was the first time that plaintiff learned that defendants had any adverse claim to the $1,300, since it had reasonably and justifiably believed, from August 15, 1949 until December 26, 1950, that defendants were indebted to Lenci in the sum of $1,300; that Lenci had no other property to which plaintiff could look for satisfaction; that defendants were barred, precluded and estopped from setting up any adverse interest whatever to the $1,300; that defendants had waived any right whatever of setoff against the $1,300. The conclusions of law based on

these findings were that defendants were estopped from asserting any adverse interest in the $1,300, that they had waived any right of setoff, and that plaintiff was entitled to judgment for $1,300.

Defendants have appealed from the judgment and the principal point urged by them is that "The court erred in refusing to admit evidence for the purpose of showing mistake on the part of the garnishee in his statement to the constable when the attachment was levied."

Appellants cite the well settled general rule that the attaching creditor stands in the debtor's shoes and can gain no greater rights than the debtor had. (*Estate of Bennett,* 13 Cal.2d 354 [90 P.2d 84, 126 A.L.R. 771]; *Clecak* v. *Dunn,* 95 Cal.App. 537 [272 P. 1104].) Appellants argue that in actions between attaching creditor and garnishee the question is whether the garnishee is actually indebted to the debtor and that any offset available against the debtor is equally available against the attaching creditor. Appellants then argue that when the trial court refused to allow them to prove that they were not in fact indebted to the debtor Lenci, it deprived them of proving their defense to the action.

Respondent does not dispute the general rule stated by appellants but contends that appellants have waived any right to a setoff and are estopped to claim one. It argues that it is a general rule that one having a right of setoff may be precluded from asserting that right through waiver or estoppel, and cites the annotation at 143 A.L.R. 454, but as pointed out by appellants, this annotation deals only with the specific relation of a bank and its depositors.

Respondent cites the cases of *Dresbach* v. *Minnis,* 45 Cal. 223, and *Bleven* v. *Freer,* 10 Cal. 172, as holding that one who gives to a sheriff an accountable receipt for property upon which a writ of attachment is levied as the property of another, is estopped from afterwards asserting ownership in himself, unless at or before the giving of the receipt he made known his claim to the officer.

Appellants argue that these two cases cited by respondent are not in point and have no application to the instant case. They state that in each of these cases the property owned by "A" was attached as the property of "B," and that in each case "A," in order to retain possession of the property, filed a receipt acknowledging "B" to be the owner of the property attached. They point out also that in the case of *Dresbach* v. *Minnis, supra,* "A" was a bidder at the execution sale and

became the purchaser of the property, purchasing it as the property of "B." They argue further than since garnishment and attachment are statutory the cited cases have no application at the present time, as provision is now made that when property is attached as the property of another, the person claiming to be the owner thereof may file a third party claim, and that this rule does not apply to garnishment.

Respondent also cites *Walters* v. *Bank of America,* 9 Cal. 2d 46 [69 P.2d 839], as supporting the rule that where the garnishee's previous conduct is inconsistent with its present denial that it has credits belonging to the judgment debtor, the garnishee is held liable in accordance with such conduct. However, as pointed out by appellants, the Walters case does not support respondent's position because the bank's conduct in that case, after being served with the writ of attachment, was tantamount to fraud against the attaching creditor, as in that case the garnishee bank credited the amount of the judgment debtor's deposit against his indebtedness to them at the time of the service of the writ, but thereafter permitted him to draw checks against his account and even recredited him with the exact amount previously credited to the indebtedness, with no further deposits having been made in the interim. It was this conduct which caused the Supreme Court to affirm a judgment in favor of the garnisher against the bank and to state at page 57:

". . . This result does not disturb the rule that garnishment proceedings reach only a debt then owing by the garnishee to the judgment debtor. It merely protects the rights of the attaching creditor against any property in the possession of the garnishee. If the garnishee's subsequent conduct be inconsistent with its formal denial that it is possessed of credits belonging to the judgment debtor, and here it is indisputably so, the result is merely that it is held liable in accordance with such conduct. Its liability as a garnishee is clearly defined, and the rights of the attaching creditor may not be defeated by its arbitrary refusal to conform to its duties and obligations as such. Its liability is not determined by an agreement between itself and the judgment debtor as to the application of the fund, but by the law which defines its liability as such garnishee."

Respondent cites a number of cases which hold that one who stands by while property to which he has title is sold is estopped from setting up a claim of title against the purchaser, but such authorities are not applicable to the instant case be-

cause an attaching creditor is not within the classification of a bona fide purchaser but merely stands in the shoes of his judgment debtor.

Respondent cites *Twisselman* v. *Reed,* 43 Cal.App.2d 310 [110 P.2d 679], where it appeared that plaintiff represented to defendants, pending sale of certain property, that he held only an oral lease and defendants purchased the property without knowledge that plaintiff had a written lease. Upon these facts the court decided that plaintiff was estopped from claiming that he was holding under the written lease. However, in that case there was admitted fraud and misrepresentation, and there is no claim or evidence of fraud in the instant case.

Respondent then urges that it would be a fraud upon the court to allow appellants to now repudiate their representation to an officer of the court, and this fact alone is sufficient to raise an estoppel, citing *McManus* v. *Montgomery,* 12 Cal. 2d 397 [84 P.2d 787]. In reply appellants contend, we think correctly, that since that case deals with an attorney suing his former client for fees in excess of that awarded by the court in a divorce action, it pertains only to the duty owed to the court by an attorney and is not here applicable to support an estoppel. ·

The learned trial judge was firmly of the opinion that appellants were estopped from proving that they did not in fact owe anything to the judgment debtor at the time of the garnishment. In ruling on respondent's objection to appellants' offer of proof the court said:

"Under your theory, Mr. Telles, as I gather it, no attachment of any kind would be valid. I mean what is the object of sending a Constable around with a writ of attachment unless it is to ascertain what assets the judgment debtor has?

. . . . . . . . . . . . .

"Now the return was made at that time, admittedly to permit any evidence in here now concerning what the actual facts would be, would be an attempt to impeach something that has already been stated and it would also be an attempt to nullify an official act on which an official return has been made. I will sustain the objection.

. . . . . . . . . . . . .

"I take the position that the return made voluntarily by the defendants in this case to the Constable estops them at this time from setting up any other fact. That is how I view

the matter. I take the position that a return to a Constable means exactly what it says. If it doesn't, there is certainly no sense in ever attempting to levy an attachment.''

We are satisfied that the trial court erred in excluding the offered testimony. ▉ In the absence of estoppel a showing that the garnishee was not in fact indebted to Lenci would be a complete defense, and even if there were an issue of estoppel it would be a material fact to be considered by the court in weighing and determining the issue of estoppel. ▉ For as stated in 10 California Jurisprudence 656:

''The burden rests upon the party asserting an estoppel to prove all the elements constituting it, by evidence having some reasonable tendency to establish the fact. Estoppels cannot be based upon mere conjecture, even if a proper foundation is laid for them in other respects. And the party must prove facts from which an estoppel is clearly deducible. . . . ▉ The existence of an estoppel is a question of fact.''

▉ This same citation then adds:

''And during the progress of a trial, the court must not, for the purpose of deciding on the admissibility of testimony, assume that the jury will find that an estoppel exists; . . .'' ▉ And in 19 American Jurisprudence at page 643, the rule is stated:

''Estoppels must be certain to every intent and are not to be taken or sustained by mere argument or doubtful inference. No party ought to be precluded from making out his case according to its truth unless by force of some positive principle of law. Hence, the doctrine of estoppel in pais must be applied strictly and should not be enforced unless substantiated in every particular.''

▉ The rule of estoppel against a garnishee to make defenses is stated in 5 American Jurisprudence, page 64, as follows:

''The general rules of estoppel against parties to a suit apply to estoppel against a garnishor. Nevertheless, it has been held that although the plaintiff was induced by the garnishee therein to begin the action and to garnish him, solely on the faith of representations made by the latter that he was indebted to the defendant in the action, and that he held funds of the defendant liable to garnishment, thus leading the plaintiff to incur expense and trouble, yet the garnishee is not thereby estopped from denying his indebtedness to the defendant, and he is at most liable to the plaintiff for the actual expenses incurred by him in reliance upon the

representations. To allow full recovery in such a case would produce a greater injury than it was intended to prevent.''

■ And in 38 Corpus Juris Secundum 393-395, it is stated:

''Since the attaching creditor or garnisher claims through his debtor, the defendant, the rights of such creditor against the garnishee depend on, and are subject to, subsisting rights between the garnishee and the principal debtor, the liability of the garnishee to plaintiff being measured by his liability, or responsibility and relation, to defendant. Accordingly, it is generally held that, except in those cases in which there has been fraud or collusion between the principal defendant and the garnishee, or in case of an estoppel, as where the creditor has been misled by the debtor's apparent ownership of the property involved and has given credit on faith thereof, or where the creditor has some other superior equity, plaintiff by garnishment can acquire no greater rights against the garnishee than are possessed by the principal defendant. In other words, plaintiff is not to be placed in any better position, or the garnishee in any worse position, than he would be if defendant himself were enforcing his claim.''

■ As hereinbefore set forth, respondent's only witness was the constable who testified to serving the writ of attachment on August 15, 1949, and being informed by appellants' bookkeeper that they owed Lenci a balance of $1,300; and that when he served the execution three months later appellant Buckley informed him that Lenci had no money due him. There is a finding that Lenci had no other property to which plaintiff could look for satisfaction, but there is no evidence whatever that Lenci had any other property at or after the levy, or that respondent made any other levy, although the attachment was for $4,100 and the constable's return indicated that there was only $1,300 due Lenci from appellants. If Lenci had no property whatever it is difficult to understand how respondent could have been damaged by the statement of appellants' bookkeeper to the constable. Unless the statement caused respondent to refrain from taking steps that might have resulted in its collecting some money from Lenci, there would be no basis for estoppel, and there was no evidence of that nature. Both reason and authority justify the conclusion that if appellants mistakenly or negligently informed the constable that they were indebted to Lenci in the sum of $1,300, the very most that they could be held liable for would be the actual damage that resulted to re-

spondent by reason of such statement. If Lenci had no other property respondent was not actually damaged by such information beyond the expense of levying the subsequent execution, although, of course, it must have been a disappointment to learn that appellants thereafter claimed that nothing was due from them to Lenci. To permit respondent to recover the sum of $1,300 from appellants upon the theory of estoppel would amount to unjust enrichment of respondent at the expense of appellants.

From the foregoing we conclude that the trial court erred prejudicially in excluding evidence as to whether appellants were in fact indebted to Lenci at the time the attachment was levied, and that, even if such ruling was not erroneous, the judgment in favor of respondent is not supported by the evidence.

The judgment is reversed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied March 4, 1953, and respondent's petition for a hearing by the Supreme Court was denied April 2, 1953. Carter, J., was of the opinion that the petition should be granted.