[Civ. Nos. 27548, 27549.   Second Dist., Div. Four.   May 14, 1964.]

FRED W. AXE, Plaintiff and Appellant, v. COMMERCIAL CREDIT CORPORATION, Defendant and Appellant.

(Two Cases)

Robert E. Rosskopf for Plaintiff and Appellant.

Getz, Aikens, Manning & Murphy and George E. Leaver for Defendant and Appellant.

KINGSLEY, J.—Plaintiff instituted the present action against defendant Commercial Credit Corporation for damages occasioned by its failure to honor a garnishment levied upon it.

On March 27, 1958, plaintiff commenced an action against S & M Lamp Co. (hereinafter S & M) to recover damages under a written contract. For approximately a period of two years prior to plaintiff's institution of the principal action S & M had been assigning its accounts receivable to defendant under a complex factoring arrangement. On April 8, 1958, defendant was served with a writ of attachment with notice of garnishment. On April 10, 1958, defendant answered the garnishment advising plaintiff that it had loaned S & M the sum of $43,506 and it was holding $56,796 in accounts receivable as security for the loan.

Four days before plaintiff's service of the writ of attachment and notice of garnishment on defendant, defendant had taken over direct collection of the accounts receivable in its possession and had notified, in writing, each of the debtors from whom said accounts were payable that the accounts receivable of S & M had been assigned to and were owned by defendant and that payments should be made directly to it.[1]

After levy of the garnishment, defendant had collected sufficient amounts on the factored accounts receivable to pay all sums, including charges due defendant from S & M, leaving in defendant's hands unpaid accounts in the face amount of $11,095.71 and cash in the sum of $1,037.24. On June 6, 1958, defendant, without the knowledge or consent of plaintiff, paid over to S & M the amount of $1,037.24 and released the balance of the accounts receivable.

On March 24, 1960, plaintiff recovered judgment against S & M in the total amount of $64,595.60. On June 30, 1960, a writ of execution was issued upon said judgment, a copy of which writ was served on defendant. Defendant made return to said writ, stating that it was not indebted and did not hold any property of S & M. Thereafter, pursuant to section 544 of the Code of Civil Procedure, plaintiff instituted the present action against defendant for its failure to honor the garnishment levied upon it. Plaintiff recovered judgment in

---

[1]Subsequent to the service of writ of attachment and garnishment on defendant, plaintiff served garnishment on three debtors owing accounts receivable to S & M. However, in each case defendant filed a third party claim, claiming ownership of the account, as a result of which the accounts were released by the sheriff.

the sum of $12,132.95 plus interest in the amount of $3,873.84, and costs. Defendant then moved for a new trial or in the alternative to reopen the case, and for an order setting aside the judgment and conclusions of law under section 662 of the Code of Civil Procedure. On March 19, 1963, a minute order was entered pursuant to section 662, amending the findings of fact, conclusions of law and judgment, changing the interest date from June 6, 1958, to July 8, 1960, thus reducing the interest figure to $2,099.72, and denying the motion for new trial or to set aside the judgment. On April 1, 1963, the court issued a minute order amending *nunc pro tunc* the minute order of March 1963 to read "pursuant to section 662, 663 of the Code of Civil Procedure."

Defendant now appeals from the judgment, as amended, *in toto,* and plaintiff has filed a cross-appeal from the orders made after judgment reducing the interest from $3,873.84 to $2,099.72, and the minute order of March 19, 1963, adding the figures "663."

### The Appeal By Defendant

At the outset it should be noted that, although defendant made a return of the garnishment stating that it was holding accounts receivable belonging to S & M in the amount of $56,796, such does not necessarily preclude or estop defendant from now denying that it was holding property belonging to S & M. (*Bear Creek Co.* v. *James* (1953) 115 Cal.App.2d 725 [252 P.2d 723].)

### I.

Section 542, subdivision 6, of the Code of Civil Procedure authorizes the garnishment of debts and credits and other personal property not capable of manual delivery which belong to the debtor and which are in the hands of third persons. Supplementing section 542, subdivision 6, is section 544 of the Code of Civil Procedure which, in part, declares: "All persons having in their possession, or under their control, any credits or other personal property belonging to the defendant, or owing any debts to the defendant at the time of service upon them of a copy of the writ and notice, as provided in this chapter, shall be, unless such property be delivered up or transferred, or such debts be paid to the sheriff, constable, or marshall, liable to the plaintiff for the amount of such credits, property, or debts, until attachment or garnishment be released or discharged or any judgment recovered by him be satisfied."

No California cases have been found which are exactly in point on their facts; and cases cited to us from other jurisdictions are not helpful, since they turn on rules as to the attachment of intangibles which differ from those prescribed by the California statutes and cases. For the reasons hereinafter set forth, we conclude that plaintiff's levy of garnishment on April 8, 1958, subjected to its ultimate judgment the equity of S & M in the accounts receivable then held by defendant.

To recover a judgment pursuant to section 544, it was incumbent upon plaintiff to prove that, at the time of the service upon defendant of the notice of garnishment, defendant had in its possession or under its control credits belonging to S & M, or that defendant was then indebted to S & M. Defendant very vehemently urges that it was neither indebted to S & M, nor possessed of any credits belonging to S & M, because S & M had sold the accounts receivable to it and thus defendant held full title to the accounts.

This contention necessitates a discussion of the contractual relationship between defendant and S & M with regard to the assignment of accounts receivable. The contract in force between defendant and S & M at the time of service of the writ and notice of garnishment provided that defendant would purchase from S & M such accounts receivable as were acceptable to defendant with full title in said accounts to vest in defendant. In return, defendant would advance to S & M 90 per cent of the gross face value of such accounts, with the remaining 10 per cent of the gross face value of the accounts to be paid upon payment in full of such accounts. At the end of each month defendant would bill S & M for charges in connection with the purchase of the accounts at a rate of .0274 per cent upon the basis of the average daily cash advance outstanding on the face value of the accounts during such month.[2] S & M warranted and guaranteed that it would immediately pay to defendant the face amount of any account where the debtor had become insolvent or where the account had not been paid in full on or before its due date. S & M was also given the right to collect all accounts from the debtor subject to defendant's power, at any time, to revoke

---

[2] The ''charges'' based on the average daily cash advances outstanding at .0274 per cent per day, when multiplied by 365 days in a year produces an annual rate of 10.001 per cent, the legal maximum (disregarding the small fraction).

such right and notify any debtor of the assignment of accounts and collect the same (as was the case here).

To keep track of its transactions with S & M, defendant kept a control ledger sheet detailing the transactions for the period leading up to and including the date of garnishment. This document for a given day, among other things, showed the outstanding balance of cash advanced by defendant; the daily purchases made; the daily amounts advanced; the amounts collected and the distribution of these amounts. This document also showed, on a given day, two reserve accounts, one labeled a "Contingent Reserve" and the other a "Reserve Adjustment." On the day the garnishment was served the face amount of the outstanding accounts receivable held by defendant was $56,796.08. The contingent reserve was $5,679.65, the reserve adjustment was credited with $7,170.10, and the outstanding balance of cash advanced by defendant was $43,506.59.

The court's finding of fact number V, in part declares: ". . . at the time of levy of said garnishment, said Commercial Credit Corporation was holding accounts receivable payable to S & M Lamp Co. in the face amount of $56,796.08, of which it was holding in reserve accounts the sum of $12,-849.75, all of which accounts receivable and reserve accounts were held as security for the payment to said Commercial Credit Corporation of the sum of $43,506.59 then due from S & M Lamp Co." This finding of fact clearly emphasizes the court's position that the transaction between defendant and S & M was a loan, with the accounts receivable being used as security for the loan, rather than, as contended by defendant, an out-and-out sale of the accounts. We concur in this analysis of the transaction.

A loan has been succinctly defined by our Supreme Court as ". . . the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use; and if such be the intent of the parties the transaction will be deemed a loan regardless of its form." *(Milana* v. *Credit Discount Co.* (1945) 27 Cal.2d 335, 339 [163 P.2d 869, 165 A.L.R. 621].) And, "Ordinarily, where accounts or other choses in action are transferred for a consideration equal to or less than their face value, of which consideration only a part is advanced in cash to the transferrer, the other part being retained by the transferee as a guaranty fund to indemnify itself for loss which it may sustain by reason of

default in the payment of some of the accounts, and where the transferrer guarantees the collectability of the accounts, agreeing to repurchase those that are in default, and where, particularly, the transferrer agrees to pay interest on the amount advanced, and the transferee agrees to refund to the transferrer the excess of the collections on the accounts over the amount actually advanced plus the transferee's charges, the courts have been induced by a combination of these circumstances, sometimes less than the whole and sometimes coupled with others, to declare the transaction a pledge of the accounts as security for a loan, rather than a sale, although the parties called it and gave to it the form of a sale." (95 A.L.R. 1197—Annotation—When transfer of accounts or other choses in action is deemed a sale rather than a pledge as security for a loan, and vice versa.)

On the facts of the case, and in the light of the prevailing law, the substance of the finding of the trial court that the transaction between defendant and S & M was a loan rather than a sale is unquestionably supported by the record. Defendant's contention to the contrary is without merit.

Next, defendant argues that, if this court "twists" the transaction between it and S & M into a loan rather than a sale and holds that the assignment of the accounts receivable created a liability on its part to pay over to S & M those sums collected over and above the amounts advanced to S & M or to return the balance of the uncollected accounts receivable, such an obligation was wholly a contingent liability, and that a debt which is uncertain and contingent in the sense that it may never become due and payable is not subject to garnishment. (*Brunskill* v. *Stutman* (1960) 186 Cal. App.2d 97, 104 [8 Cal.Rptr. 910] ; *Dawson* v. *Bank of America* (1950) 100 Cal.App.2d 305, 309 [223 P.2d 280] ; *Clecak* v. *Dunn* (1928) 95 Cal.App. 537, 540 [272 P. 1104].)

On the other hand it has been the law in California, long prior to the turn of the century, that a note in possession of a creditor pledged as security for a loan is a credit of the debtor, which is attachable by garnishment and the attachment lien not only fastens itself upon the note, but also transfers itself to the money when collected thereon by the garnishee. (*Deering & Co.* v. *Richardson-Kimball Co.* (1895) 109 Cal. 73, 84 [41 P. 801] ; *Crow* v. *Yosemite Creek Co.* (1957) 149 Cal.App.2d 188, 194 [308 P.2d 421] ; see also 83 A.L.R. 1383.) Whether we designate the transfer in this case as a pledge or an assignment of title for security, the fact remains that defendant had in its possession or

under its control personal property or credits of S & M in the same fashion as a garnishee who holds uncollected notes as security, and was directly liable to the garnishor under section 544 when it violated the garnishment. Any other holding would be in direct contradiction to the long standing and firmly established case authority covering situations similar to the case at bar.

We find the following passage from *Crow* v. *Yosemite Creek Co., supra* (1957) 149 Cal.App.2d 188, 194, extremely apropos to the situation we now have before us. ''Any other result would allow a debtor to defeat all except one of his creditors by placing all of his assets under such a warehousing arrangement in favor of such one creditor. This would place beyond the reach of the other creditors all of such assets even when the holder of the warehouse receipt had a claim for far less than the value of said assets.'' As seen previously, S & M assigned to defendant $56,796.08 of accounts receivable in return for $43,506.59. This left defendant holding credits belonging to S & M in the amount of $12,849.75. Yet when plaintiff attempted to garnish directly debtors of S & M, defendant filed a third party claim and had the attachment released. If plaintiff is unable to attach these credits of S & M in the hands of defendant, such assets would be completely out of reach of a bona fide attaching creditor, as plaintiff is here.[3]

II

Defendant next complains that the trial court erroneously found that the accounts receivable, totalling $11,095.71 on June 6, 1958 (the date defendant returned them to S & M) had a value equivalent to their face value, and, therefore, that the court erred in awarding damages in said amount.

At the trial, plaintiff relied on the presumption applicable to instruments in writing, that such are prima facie

[3]It is this element which distinguishes the instant case from cases of a mere assignment for collection. In the collection cases, the assignee is a mere agent, liable neither to the assignor nor to a garnishor unless and until he has actually made a collection (see Note 60 A.L.R. 884); but the assignee for collection, by the same token, has no standing to file a third party claim against a garnishment of the account, levied against the obligor of the account receivable. Thus the attaching creditor is not there left without remedy. The same distinction exists with reference to *Smith* v. *Crocker First Nat. Bank* (1957) 152 Cal.App.2d 832 [314 P.2d 237], relied on by defendant. In the *Crocker* case, the drafts were held only for collection and the bank claimed no rights in them.

worth their face value. (Civ. Code, § 3356; *Revert* v. *Hesse* (1920) 184 Cal. 295 [193 P. 943]; *Ziegler* v. *Wells, Fargo & Co.* (1863) 23 Cal. 179 [83 Am.Dec. 87].) It is to be noted, however, that this presumption may be attacked by evidence showing the insolvency of the maker or other factors tending to reduce the value of such instrument. (*Meyer* v. *Thomas* (1936) 18 Cal.App.2d 299 [63 P.2d 1176].) We believe, that, by analogy, the same rule should apply in the circumstances of this case. ▮ At the time defendant was served with notice of garnishment, it had been collecting on the accounts receivable, and presumptively was in the better position to evaluate the accounts. Yet at trial, defendant introduced no evidence to rebut or contradict plaintiff's alleged valuation of these accounts. Defendant, at this late date, should not now be heard to complain over a factual contention it easily could have rebutted or contradicted at trial.

▮ Nor do we find any error in the trial court's denial of defendant's motion for new trial on the issue of damages or in the alternative to reopen the case for the presentation of additional evidence on the issue of damages. Defendant, in support of this motion, presented the affidavit of Paul Anderson, one of its employees. However, this affidavit is wholly insufficient to warrant this court to declare the trial court's action an abuse of discretion in refusing to grant defendant its motion. In essence, this affidavit is full of hearsay declarations, with no showing of any proper evidence which would have produced a different result.

### The Cross-Appeal

#### I

Plaintiff urges that the trial court erred in modifying the interest date from June 6, 1958 (the date defendant paid over the cash and released the balance of accounts receivable to S & M) to July 8, 1960 (the date of levy of execution on defendant, after plaintiff had recovered judgment in the main action against S & M). ▮ This point has long been settled in this state by *Walters* v. *Bank of America* (1937) 9 Cal.2d 46, 58 [69 P.2d 839, 110 A.L.R. 1259], which holds that interest runs not from the date of attachment, but from the date of judgment. Plaintiff, however, cites Civil Code, section 3287, which, in effect states that a party is entitled to recover interest on an obligation from the date the right to recover is vested in him. ▮ However, under California law, a creditor attaching property as security for satisfaction of judgment that may be recovered obtains only a potential

right or a contingent lien. (*United States* v. *Security Trust &
Savings Bank of San Diego* (1950) 340 U.S. 47 [71 S.Ct. 111,
95 L.Ed. 53].) This right becomes choate on date of judg-
ment and the right to collect interest thereon vests on said
date.

## II

Secondly, plaintiff argues that the trial court lacked juris-
diction to amend the judgment changing the interest date
from June 6, 1958, to July 8, 1960, and reducing the amount
of interest from $3,873.84 to $2,099.72. The argument is as
follows: an order such as herein in question can be made only
under section 662 of the Code of Civil Procedure and not (as
the *nunc pro tunc* order implies) under section 663; since
notice of entry of the original judgment was mailed on Jan-
uary 8th, the time within which an order under section 662
could be made expired (allowing for the day of mailing and a
Sunday) on March 11th, which was 8 days before the date of
the order in question (March 19th).

We need not decide the problem thus presented. As we
have pointed out above, the original judgment was in error in
computing interest from the date of levy of the writ of gar-
nishment. Had no correction been made in the trial court, the
error (having been timely called to the attention of the trial
court) would have been corrected in this court on the appeal
from the judgment. (3 Witkin, Cal. Procedure, Appeal, § 183,
p. 2378.) Since the judgment as purportedly modified by the
trial court is the same as we would have directed without
such modification below, the issue is now moot.

The judgment appealed from is affirmed on both appeals,
respondent Fred W. Axe shall recover his costs on appeal,
computed as provided in rule 26(c) of the California Rules
of Court, except that only three-fourths of the cost of print-
ing of his brief on appeal shall be included in such computa-
tion.

Burke, P. J., and Jefferson, J., concurred.

The petition of the defendant and appellant for a hearing
by the Supreme Court was denied July 8, 1964.