[Civ. No. 22881. First Dist., Div. One. Nov. 9, 1966.]

LENORE A. MEYER, Plaintiff and Respondent, v. GLEN-MOOR HOMES, INCORPORATED, Defendant and Appellant.

*Assigned by the Chairman of the Judicial Council.

244

LeRoy A. Broun for Defendant and Appellant.

Spruance, Simonian & Pretzer and Arthur L. Pretzer for Plaintiff and Respondent.

SIMS, J.—Defendant corporation has appealed from a judgment for plaintiff entered on a jury verdict, and from an order denying its motion for judgment notwithstanding the verdict in an action on a $25,000 note signed under the corporate name by plaintiff's deceased husband, the president of the corporation.

In its answer the corporation, in addition to a general denial, set forth lack of authority of the signer of the note, and lack of consideration. The case was submitted to the jury on these issues, and on the theory of equitable estoppel, as it applied both in favor of and against the payee. Defendant's principal contention is that the court erred in denying its motion for judgment notwithstanding the verdict. Inherent in this position is the proposition that there is no evidence sufficient to sustain the verdict and judgment. Defendant assumes this burden and asserts before this court that the evidence

reflects as a matter of law that the execution of the note was never authorized by the corporation; that the corporation never bargained for or received any consideration in return for the execution and delivery of the note; and that the verdict and judgment cannot be sustained on the theory of equitable estoppel because the plaintiff failed to plead facts necessary for an estoppel and because the proof fails to show facts necessary to recovery on that theory. Related objections to the instructions given by the court embrace: (a) alleged error in instructing on equitable estoppel for the reasons stated above; (b) inadequacy of the instructions on equitable estoppel; (c) alleged error in certain instructions given and refused on the subject of agency; (d) alleged error in an instruction on consideration. Defendant further contends that if the doctrine of equitable estoppel were properly in the case, it should have been applied as a matter of law to preclude plaintiff from recovery on the note.

An analysis of these contentions, as applied to the facts of this case when viewed in the light of applicable principles of law, leads to the conclusion that the uncontroverted facts establish that plaintiff has no right to recover from the defendant on the note. It was therefore error to deny the defendant's instruction for a directed verdict and its subsequent motion for judgment notwithstanding the verdict. The alleged errors in the instructions are thereby rendered moot, and are hereinafter discussed only as they reflect upon the substantive law applicable to the facts.

*Summary of Facts*

In 1951 James R. Meyer, plaintiff's deceased husband, James L. Reeder, Sr., a builder, and Ralph E. Cotter, Jr., a civil engineer, became associated for the purpose of purchasing, developing, selling and investing in land and improvements. Defendant corporation was formed April 30, 1951. The first blueprints for homes that were built were drawn on Meyer's dining room table. The enterprises grew and numerous corporations were formed to carry on the undertakings in which the associates and others were interested. Plaintiff considered defendant corporation as "the mother" or "the corporation," and the complex was often referred to as "Glenmoor Homes."

The three associates were the directors of defendant corporation. Meyer was the president and owned slightly less than 40 percent of the outstanding stock. Reeder was the vice president and treasurer, and with Robert H. Reeder owned 20 per-

cent. Cotter was secretary and owned 40 percent, and the remaining shares were owned by Raymond T. Jennings. Since 1954 John Cortner had been the assistant secretary and office manager of defendant corporation.

The ownership varied with the different corporations. Amongst the corporations was Glenmoor Sales Agency, Inc. which had been organized to handle real estate sales and to purchase and hold land for future development. It had three stockholders, Meyer, Cotter and Reeder, and they each owned one-third of the stock.

In 1960 premises at 4250 Central Avenue in Fremont, which was owned by Glenmoor Sales Agency, Inc., had been improved with an apartment house constructed by defendant corporation. The three associates desired to get permanent financing for the apartment to pay off the construction loan and hold the property as a long term investment. The financial institution required that they apply for the loan as individuals. The loan could have been obtained on their individual deed of trust with the signatures of their respective wives, but their accountant and attorney advised them to set it up as a partnership for easier and more efficient operation.

The property was conveyed from Glenmoor Sales Agency, Inc. to the three individuals by deed dated January 7, 1960 and recorded January 14, 1960. A second, quitclaim, deed from the respective wives to the three associates was prepared and was ultimately signed by the three spouses and recorded January 27, 1960.

This controversy arises out of the circumstances under which Meyer secured the signature of his wife. According to her testimony her husband said the corporation wished to borrow money. She inquired as to why she should give up rights rather than signing for the loan, and asked him the value of their interest. On being advised it was $50,000, she stated ''Fine, you have your boys, your corporation give me a note for my interest and I will sign a quitclaim deed.'' Thereafter Cortner, the office manager, appeared with the $25,000 note which is the subject of this action, and she signed the document her husband had requested her to sign. The fact that this note was signed and delivered was not discovered by the remaining officers, directors and stockholders until after Meyer's death.

The property was held in partnership until Meyer's death March 3, 1962. It was thereafter liquidated, and his portion of the proceeds went into his estate. On January 26, 1961, Meyer

executed a will in which he declared that all property in which he had any interest was community property. By this will and a codicil thereto executed February 27, 1962, Meyer left the bulk of his estate in two trusts, and put his wife to her election as to whether to take under the will. She is to receive the income and has a limited power of appointment as to one trust, and is entitled to invade the income and principal of the second trust under certain contingencies. She ultimately elected to take under the will.

The shares held by Meyer in defendant corporation were subject to the corporation's option to buy them from his estate. This option was exercised after his death.

The remaining facts appear in the body of the opinion.

*Authority*

There is no evidence in the case to show that the particular transaction, whereby the decedent signed[1] and caused the note of the corporation to be delivered to his wife in return for her joining in the execution of the quitclaim deed from the respective wives of the partners who had individually received the property from Glenmoor Sales Agency, Inc., was ever expressly authorized or ratified by defendant corporation or anyone, other than decedent, acting on its behalf. The testimony is all to the contrary.

The instrument does bear the corporate seal. Under the provisions of section 833 of the Corporations Code the note itself thereby constitutes "prima facie evidence that [it] is the act of the corporation, that it was duly executed and signed by persons who were officers or agents of the corporation acting by authority duly given by the board of directors, and that the seal is the duly adopted corporate seal of the corporation, and that it has been affixed as such by a person duly authorized so to do, . . ." It is thereby admissible in evidence without further proof of its execution. It has been stated: "Where the corporate seal is used there is, of course, a *presumption of authority*, . . ." (6 Cal.Jur., p. 1095, as quoted with ap-

---

[1]The note recites, "Glenmoor Homes, Incorporated promise [*sic*] to pay . . .", and is subscribed "Glenmoor Homes, Incorporated" in typewriting under which appears the signature "James R. Meyer" without any designation of his capacity. The questions of whether the ambiguity as to the capacity in which the signature was made affects the personal liability of the signer, or the prima facie liability of the corporation has not been raised by the parties, and is only noted here. (See Civ. Code, former §§ 3098, subd. (6), 3100, and 3101; Com. Code, §§ 3402 and 3403, subd. (2)(b); and cf. Official Comments on Uniform Commercial Code, par. 3, example (e), with *Shaver* v. *Ocean Mining Co.* (1862) 21 Cal. 45, and *Haskell* v. *Cornish* (1859) 13 Cal. 45.)

proval in *Magnavox Co.* v. *Jones* (1930) 105 Cal.App. 98, 103 [286 P. 1084]; italics added.) The statutory mandate does not go so far. "Prima facie evidence is that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence. For example: the certificate of a recording officer is prima facie evidence of a record, but it may afterwards be rejected upon proof that there is no such record." (Code Civ. Proc., § 1833; *Blood* v. *La Serena Land & Water Co.* (1896) 113 Cal. 221, 225-226 [41 P. 1017, 45 P. 252]; and see *Associated Discount Corp.* v. *Tobb Co., Inc.* (1966) 241 Cal.App.2d 541, 548 [50 Cal.Rptr. 738]; and *San Ramon Valley Bank* v. *Walden Co.* (1921) 53 Cal.App. 534, 536 [200 P. 662]; and cf. Evid. Code (1967) §§ 602, 601 and 603 and 604 with 605 and 606.) Some cases indicate that prima facie evidence, since it must not only be contradicted but also overcome, will sustain a finding against contrary evidence. (See *Miller & Lux, Inc.* v. *Secara* (1924) 193 Cal. 755, 770-772 [227 P. 171]; *People* v. *Van Gorden* (1964) 226 Cal.App.2d 634, 637 [38 Cal.Rptr. 265]; and *Frank Meline Co.* v. *Kleinberger* (1930) 108 Cal.App. 60, 62-63 [290 P. 1042].)

If the record is so construed in this case the trial court properly denied defendant's instruction for a directed verdict and left the matter of authority to the jury within the principles of the following rule: "It has long been the rule in this state that a nonsuit may be granted only when, disregarding conflicting evidence, giving to the plaintiff's evidence all the value to which it is legally entitled, and indulging in every legitimate inference which may be drawn from that evidence, the court properly determines that there is no substantial evidence to support a verdict in favor of the plaintiff. (*Seneris* v. *Haas*, 45 Cal.2d 811, 821 [291 P.2d 915, 53 A.L.R.2d 124]; *Estate of Caspar*, 172 Cal. 147, 150 [155 P. 631].)" (*Leonard* v. *Watsonville Community Hospital* (1956) 47 Cal.2d 509, 514-515 [305 P.2d 36]; accord: *Memorial Hospital Assn.* v. *Pacific Grape etc. Co.* (1955) 45 Cal.2d 634, 635 [290 P.2d 481, 50 A.L.R.2d 442]; *Jefferson* v. *Hewitt* (1894) 103 Cal. 624, 627-628 [37 P. 638]; *Moore* v. *Phillips* (1959) 176 Cal.App.2d 702, 708-709 [1 Cal.Rptr. 508]; and see *Associates Discount Corp.* v. *Tobb Co., Inc., supra*, 241 Cal.App.2d 541, 547.

The same opinion continues, and states: "There is, however, a qualification on this broad general rule. It is settled that where the evidence raises an inference that a fact exists, and either party produces evidence of the nonexistence of the fact that is clear, positive, uncontradicted and of such a nature

that it cannot rationally be disbelieved, the nonexistence of the fact is established as a matter of law. (See *Blank* v. *Coffin,* 20 Cal.2d 457, 461 [126 P.2d 868].) In these circumstances the inference is dispelled as a matter of law, and, if the fact inferred is necessary to establish an essential element of the plaintiff's case, a nonsuit or directed verdict is proper. (*Engstrom* v. *Auburn Auto. Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059] [directed verdict]; *Crouch* v. *Gilmore Oil Co., Ltd.,* 5 Cal.2d 330 [54 P.2d 709] [nonsuit]; *Ceranski* v. *Muensch,* 60 Cal.App.2d 751 [141 P.2d 750] [directed verdict]; *Johnston* v. *Black Co.,* 33 Cal.App.2d 363 [91 P.2d 921] [insufficiency of evidence].)'' (47 Cal.2d at p. 515; and see *Krause* v. *Apodaca* (1960) 186 Cal.App.2d 413, 419 [9 Cal.Rptr. 10]; *Estate of Gilbert* (1957) 148 Cal.App.2d 761, 768-769 [307 P.2d 395].)

In *Vaca Valley etc. R.R.* v. *Mansfield* (1890) 84 Cal. 560 [24 P. 145], the opinion states in regard to the presence of the corporate seal: ''The proposition above stated as to the corporate seal, and the presumption arising from its being affixed to the deed, is undoubtedly correct, and well supported by authority. [Citations.] But *prima facie* evidence is that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence. It may, however, be contradicted, and other evidence is always admissible for that purpose. It was competent, therefore, for the plaintiff to prove all the facts and circumstances connected with the deed in question, and to show whether it was a valid deed or not. Now, the uncontradicted testimony shows that the directors of the corporation plaintiff never sold or authorized a sale of the two blocks in controversy, nor did its president ever agree to sell them; and that the deed, when signed, was a blank, and was never acknowledged. Under these circumstances, the deed was as absolutely void and as ineffectual to convey any title as it would have been if an entire forgery. There was no ground, therefore, for the application of the doctrine of estoppel.'' (84 Cal. at p. 566.)

The note itself does not establish actual authority in the face of the uncontroverted evidence concerning its execution and delivery, and the inaction of the corporation. (*Blood* v. *La Serena Land & Water Co., supra,* 113 Cal. 221, 225-226.)

Plaintiff asserts that in any event there was implied authority to execute and deliver the note. ■ ''To properly prove a contract claimed to be binding on the corporation, it should be shown that it was made on its behalf by someone who had authority to act for it. It must be shown that the

officer was expressly authorized, or that the act was fairly within the implied powers incidental to his office, or that the corporation is estopped to deny his authority by reason of having accepted the benefit of the contract or otherwise." (6 Cal.Jur. 1095, as quoted in *Magnavox Co. v. Jones, supra*, 105 Cal.App. 98, 103, and approved in *Memorial Hospital Assn. v. Pacific Grape etc. Co., supra*, 45 Cal.2d 634, 637.) In the case last set forth the opinion continues: "Where the president of a corporation is also its general manager, having the power to superintend and conduct its business, he has implied authority to make any contract or do any other act appropriate in the ordinary course of its business. In such case, his powers are greater than he would have as president alone. (19 C.J.S., § 1001, p. 466; Fletcher Cyc. Corps. [Perm. ed. 1931], vol. 2, §§ 553, 594.)" (45 Cal.2d at p. 637; and see *Grummet v. Fresno Glazed Cement Pipe Co.* (1919) 181 Cal. 509, 513-514 [185 P. 388]; *People v. Parker* (1965) 235 Cal.App.2d 86, 93 [44 Cal.Rptr. 900]; *Moore v. Phillips, supra*, 176 Cal.App.2d 702, 709-711; *Davis v. Pacific Studios Corp.* (1927) 84 Cal. App. 611, 622 [258 P. 440]; *Stevens v. Selma Fruit Co., Inc.* (1912) 18 Cal.App. 242, 250-253 [123 P. 212]; 19 Am.Jur.2d, Corporations, §§ 1210-1211, pp. 627-629; but *cf. Peasley v. Producers Market Co., Inc.* (1927) 86 Cal.App. 577, 584 [261 P. 733]; *International Magazine Co. v. National Radio Co.* (1924) 67 Cal.App. 498, 500-502 [227 P. 918]; *Wickersham Banking Co. v. Nicholas* (1905) 2 Cal.App. 18, 21 [82 P. 1124]; 19 Am.Jur.2d, Corporations, §§ 1214-1215, pp. 630-632.)

It is clearly apparent from the foregoing that in order to have authority which is implied in fact the agent, be he president or general manager of a corporation, or both, must be performing an act which is "appropriate in the ordinary course of its business" (45 Cal.2d at p. 637).

Plaintiff's version of the facts tends to support her contention that there was implied authority for the decedent to buy land for the corporation and cause the corporation to give its notes therefor; but the evidence as a whole fails to sustain her assertion that there was implied authority to obligate the corporation in this transaction. The evidence reflects that the decedent was the president of the corporation and exercised a great many functions and duties for the corporation; that he would go out and enter into contracts on behalf of the corporation including the purchase of land— in fact his primary job was to handle the real estate and financing transactions; that he was one of four officers of the corporation who

was authorized to sign checks which would transfer funds of the corporation when signed by another officer; that he could be compared to a general manager of a corporation. The vice president and treasurer could not recall that the decedent had ever signed any contracts for the corporation without specific written authority to do so; nor did he know that decedent ever transferred corporate funds without specific authorization.

The office manager and assistant secretary testified that when there was a large amount of money, like $25,000, notes were generally signed by the president and the secretary or by all three directors; that there were probably times when the decedent as president and he as assistant secretary had signed checks without specific authorization in the minutes, and that afterwards they tried to get the approval of the other directors and get it recorded in the minutes so it was there; that in the past the corporation had honored documents and checks signed by the decedent without written authorization in the corporate minutes; that to his knowledge the decedent had never signed a note to anybody without receiving some material benefit from it, nor did he know of any other transaction like this one.

Transactions for the purchase of land for the corporation were discussed by the decedent with the other directors and entered in the minutes; there was no fixed pattern as to the manner in which title to land purchased by the corporation was taken, whether in the corporate name or in the name of an individual, or individuals.

The office manager further testified that so far as he knew the stockholders and directors did not intermingle their private affairs with corporate affairs, and if they got anything from the corporation they paid for it; that they would use a company car; that with the authorization of the board of directors entered in the minutes corporate funds had been loaned to the individual directors and to other corporations, and the corporation had issued its notes for funds borrowed and actually received from the directors. When notes were given from one corporation to another he believed two officers signed but there were probably instances where there was just one signature. He acknowledged that he could not remember every act of the corporate officers during his employment by the corporation; that there could have been a loan made or a promissory note executed which was not reflected in the minutes; and that the corporation had never disavowed a transaction in which

one of the directors had engaged and subsequently sought to have authorized.

The third director, who was the secretary of the corporation, testified that with the exception of minor charitable contributions of from $100-$200 nobody in the corporation was ever authorized to give money or promise money, write checks or give notes to anyone without receiving some consideration, land or money back for the note or the check; that plaintiff had signed other deeds in which her interest was released to defendant corporation prior to and subsequent to the transaction at issue; that there was an indirect benefit to the stockholders in having the corporation free to deal with the property because if it made money the stockholders' equity would increase. He stated that decedent's authority to bind the corporation to pay money for land was dependent on prior authorization; that even if not in the minutes any substantial transaction would be discussed with the other directors before it was entered into; that only in minor circumstances, in no major transactions, could an individual purport to bind the corporation and then seek subsequent ratification; and that to the best of his knowledge no major transaction was ever done that way.

From the foregoing it may be implied, as asserted by plaintiff, that the decedent could be compared to a general manager of a corporation; that the business of the corporation was to buy land and it was his job to buy that land in behalf of the corporation; that on previous occasions land had been purchased for the corporation by taking title in the name of individuals; that the corporation had always acquiesced in prior transactions because they were previously authorized or minor in nature; that it was possible that there were transactions which did not appear in the corporate minutes; that notes had been signed by only one officer; that the note involved herein bore the corporate seal and was delivered by a corporate officer; and that no by-laws were introduced to show lack of authority.

The shortcoming of plaintiff's case for implied authority is that she has failed to show that the corporation ever engaged in transactions where it became obligated to pay for land, or an interest therein, which was conveyed to another for the use and benefit of that grantee as distinguished from the use and benefit of the corporation. The fact that on occasion the corporation paid for land in which title was conveyed to another for its benefit may have some significance on the questions of osten-

sible authority and equitable estoppel, but cannot serve to create actual authority implied in fact to pay for land conveyed to the use and benefit of another. The fact that there may have been some transactions which were not entered in the minutes, or that the by-laws were not produced, or that the trial court and jury might even disregard the testimony of the surviving officers cannot furnish evidence that the officer who acted for his own purposes was authorized to act for the corporation because of past dealings. There is a failure to show that this transaction was ''appropriate in the ordinary course of its business.''

■ The instruction given by the court,[2] to which defendant objects, properly states the law, but was not warranted by the evidence.

■ The court further instructed the jury in regard to ratification in the words of Civil Code section 2310.[3] The defendant objected and objects to the giving of this instruction and complains of the failure to give an instruction proffered by it on the same subject.[4]

Each of the instructions correctly states the law as far as it goes, but the instruction was not warranted on the issue of actual ratification because there was no evidence to show any corporate act retroactively authorizing the execution and delivery of the note. Nor was it warranted on the issue of implied ratification by retention of benefits because as is hereinafter pointed out there were no benefits bargained for and

---

[2]''It is not necessary that a particular act or failure to act has been expressly authorized by the principal to bring it within the scope of the agent's authority. Such conduct is within the scope of his authority if it occurs while the agent is engaged in the duty which he was employed to perform and relates to those duties. Conduct for the benefit of the principal which is incidental to, customarily connected with or reasonably necessary for the performance of an authorized act is within the scope of the agent's authority.''

[3]This instruction read: ''Section 2310: 'A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof.''

[4]This instruction read: ''You are instructed that if James R. Meyer, deceased, acted without authority of the defendant corporation in executing the note sued on herein and the officers authorized to act for and bind the corporation had no knowledge of his unauthorized act, his action could be ratified by the corporation only by action of those persons authorized to bind the corporation, after they had knowledge of the facts involved in the unauthorized transaction. Unless such persons thereafter ratified such act on behalf of the corporation, or the corporation retained some benefit from the unauthorized act, you should find for the defendant, and against the plaintiff.''

received by the corporation. Finally, ratification was inapplicable because there is no evidence to charge notice or knowledge of the existence of the note to the corporation—a subject treated *infra* under the discussion of equitable estoppel. (*Blood* v. *La Serena Land & Water Co., supra,* 113 Cal. 221, 226-229.)

It is concluded there was no actual or implied authority for decedent to bind the corporation by the note he purported to execute, and that his action in so doing was not actually or impliedly ratified by the corporation.

*Consideration*

■ The evidence is clear that the act performed by plaintiff at the request of the decedent was the appending of her signature to a quitclaim deed which named her husband and his two associates individually as the grantees; and that these grantees took as individuals and not for the use and benefit of defendant corporation. Upon her husband's death a one-third interest in the property was reflected in the inventory of his estate. Plaintiff petitioned to have its status determined and at an ex parte hearing secured an adjudication that it was his separate property. She did not assert that it was held by him on a resulting trust for the corporation. The property was sold after his death and the net proceeds from the decedent's one-third interest were paid to his estate. Nevertheless, plaintiff insists that the corporation received consideration. The premises on which she rests are not sustained by the evidence.

■ She alleges that the corporation had received valuable property in the past from plaintiff. There is no evidence to show whether plaintiff in fact surrendered any interest of value by her conveyances to the corporation or whether she was used as a nominee of the corporation as trustee of a resulting trust and surrendered her interest to the corporate *cestui que trust*; nor does the testimony that she herself received no individual consideration in those past transactions demonstrate that the community was not benefited by the conveyances made. Moreover, there is no evidence to show that the note was intended to be in payment for past benefits granted to the corporation. (See *Dugan* v. *Pettijohn* (1955) 134 Cal. App.2d 133, 137-138 [285 P.2d 339] ; and *Dow* v. *River Farms Co.* (1952) 110 Cal.App.2d 403, 408-409 [243 P.2d 95].) The same observations apply to plaintiff's contention that the note was given for benefits she would confer on the corporation by

subsequent conveyances of land to which she held nominal title.[5]

 Consideration is also sought to be predicated upon the benefits to the corporation from the contract to construct the apartment building on the land in question. One of the cograntees, who was the vice president and treasurer of the corporation, did testify that the purpose of the deed from Glenmoor Sales Agency, Inc. to the three individuals was to set up the partnership as individual owners for the purpose of building an apartment house, and that defendant corporation was the building contractor. The record reflects that at the time defendant corporation constructed the apartment house the property stood in the name of Glenmoor Sales Agency, Inc.; that it was completed or substantially completed by January 1960; and that defendant corporation had received pay for the construction.

The transaction contemplated was a "take-out" loan to replace the short term bank financing for construction with a permanent loan. There is nothing to show that defendant corporation bargained for or received any of the proceeds of the loan that was obtained by the individual grantees. The probate records reveal that defendant filed a claim for $40,550.17, representing one-third of the unpaid construction costs, against the estate of the decedent, and received $38,883.51 from the estate's share of the proceeds of the sale of the property.

Plaintiff's testimony reflects that decedent represented the deed was for the corporation and that she offered to sign if the corporation would give a note for her interest. These facts are material on the questions of ostensible agency and equitable estoppel, but do not show, in the absence of authority in the decedent, that the corporation in fact bargained for the conveyance that was made.

 "It is presumed that a promissory note or bill of exchange was given or endorsed for a sufficient consideration. (Code Civ. Proc., § 1963, subd. 21), . . ." (*Strain* v. *Security Title Ins. Co.* (1954) 124 Cal.App.2d 195, 201 [268 P.2d 167].) "A promissory note is presumed to have been given for a sufficient consideration under section 1614 of the Civil Code and in an action thereon, the introduction of the note in evidence establishes a *prima facie* right to recover according to its terms. The burden of showing a want of consideration, under

[5]The proceedings in the estate reflect that there were interests in property held by the decedent in his own name for the sole interest of the corporation to the exclusion of any personal or community interest.

section 1615 of that code, is cast upon the party seeking to avoid it, and if he fails to make this showing, the presumption prevails and furnishes sufficient evidence to support a finding that the note was given for a good and valuable consideration." (*DeTray* v. *Higgins* (1939) 31 Cal.App.2d 482, 494 [88 P.2d 241]; accord: *Kester* v. *Reynolds* (1959) 176 Cal. App.2d 36, 39 [1 Cal.Rptr. 127].)

▮▮ "The absence of consideration is always a defense to a suit on a promissory note (Civ. Code, § 3109) and since an instrument lacking in consideration is invalid, this fact may be shown by extrinsic evidence (Code Civ. Proc., § 1856, subd. 2; *Harper* v. *French*, 29 Cal.App.2d 214 [84 P.2d 216] . . .)" (*Doria* v. *International Union* (1961) 196 Cal.App.2d 22, 39 [16 Cal.Rptr. 429].) Where the evidence produced by the plaintiff reflects the absence of consideration it is proper to grant a nonsuit. (See *Doria* v. *International Union, supra,* 196 Cal.App.2d 22, 32-33.)

The trial court instructed the jury as follows: "In determining whether or not there was consideration in this case you should determine whether or not by reason of the defendant's promise to pay her, the plaintiff changed her position or incurred some detriment or loss.

"The law does not require that the consideration for a promise be of any particular value. If there is a detriment to one party and benefit to another there is valid consideration." The last portion correctly states the law, but defendant objects to the first portion in that it assumes that there was an authorized promise by defendant to pay plaintiff. ▮▮ "[T]he consideration for a promise must be an act or a return promise, bargained for and given in exchange for the promise. [Citations.] In the words of section 75 of the Restatement of Contracts (com. b): 'Consideration must actually be bargained for as the exchange for the promise . . . The existence or non-existence of a bargain where something has been parted with by the promisee or received by the promisor depends upon the manifested intention of the parties. . . . The fact that the promisee relies on the promise to his injury, or the promisor gains some advantage therefrom, does not establish consideration without the element of bargain or agreed exchange.' (Language approved in *Bard* v. *Kent, supra,* p. 452 [19 Cal.2d 449 (122 P.2d 8, 139 A.L.R. 1032)].)" (*Simmons* v. *California Institute of Technology* (1949) 34 Cal.2d 264, 272 [209 P.2d 581]; accord: *Forgeron Inc.* v. *Hansen* (1957) 149 Cal.App.2d

352, 360-361 [308 P.2d 406].) Plaintiff's attempts to show that the defendant bargained for the detriment which she allegedly suffered founders on the lack of authority of the decedent to pledge the corporate credit and assets to pay for a conveyance to himself and others individually for their sole benefit.

 The record reflects that there was an incidental benefit to Reeder and Cotter, as well as to the decedent, in that they all were enabled to effect the desired financing after plaintiff executed the quitclaim deed. It is suggested that this was a consideration which would support the note from the defendant corporation as the *alter ego* of the three partners. (*Cf. Hotaling* v. *Hotaling* (1924) 193 Cal. 368, 380-381 [224 P. 455, 56 A.L.R. 734].) "In order that the acts and obligations of a corporation be legally recognized as those of a particular person, and vice versa, the complaint must allege and it must be shown by the evidence, that the organization of the corporation is in some manner fraudulent or prompted by dishonesty, or that the corporation committed or intended to commit a fraud, or that injustice will be done if the corporate entity is not disregarded. [Citations.]

 "Affirmative proof or direct inference from proof must be present to establish that there is such unity of interest and ownership as indicates a cessation of the individuality and separateness of the person and corporation. [Citations.] The corporation must be treated as a separate entity until such proof is made. [Citation.] The doctrine cannot be applied here for there is no pleading, and the record is devoid of any evidence, that appellant corporation was but the instrumentality through which Wyllis transacted his business or that he was the sole owner of all, or any, of appellant's capital stock or that appellant corporation was in effect the double of Wyllis." (*Judelson* v. *American Metal Bearing Co.* (1948) 89 Cal.App.2d 256, 263 [200 P.2d 836]; and see *Oakland Medical Bldg. Corp.* v *Aureguy* (1953) 41 Cal.2d 521, 524 [261 P.2d 249]; and *Commercial Lbr. Co.* v. *Ukiah Lbr. Mills* (1949) 94 Cal.App.2d 215, 219 [210 P.2d 276].) Here the evidence affirmatively shows that the interests in the partnership and the corporation were different. Moreover, since the purpose of the doctrine of disregarding the corporate entity is to prevent fraud it cannot be used to inflict an obligation on an innocent corporation or its minority stockholders. (*Oakland Medical Bldg. Corp.* v. *Aureguy, supra* and *Commercial Lbr. Co.* v. *Ukiah Lbr. Mills, supra*; *Dashew* v. *Dashew Business*

*Machines, Inc.* (1963) 218 Cal.App.2d 711, 716 [32 Cal.Rptr. 682].)

The whole of the evidence discloses not only a situation where there was no actual authority or authority implied in fact, but also a transaction, which because it purported to obligate the corporation to pay a debt incurred personally by its officer and director, could not be ratified by the corporation. (*Chamberlain* v. *Pacific Wool-Growing Co.* (1880) 54 Cal. 103, 106; *Hall* v. *Auburn Turnpike Co.* (1865) 27 Cal. 255, 257 [87 Am.Dec. 75]; and see *Thorman* v. *Dome Producing etc. Co.* (1942) 50 Cal.App.2d 201, 203 [122 P.2d 927].) In the latter case the opinion states: ''The officers of a corporation have no power to authorize the execution of a note as surety for another in respect to a matter having no relation to the corporate business, and in which the corporation has no interest. Such a transaction is not within the scope of its business, and a party receiving such note with notice of the circumstances under which it is given cannot recover on it. [Citations.] The note in question was given to plaintiffs for a debt due them from Banvard, one of the Directors of the corporation, and creates no liability in the plaintiffs' hands against the corporation. The Directors acted without authority in making and ratifying the note, and it is, therefore, not the note of the corporation.'' (27 Cal. at pp. 257-258.)

Attention is therefore directed to the question of ostensible authority and equitable estoppel.

*Equitable Estoppel*

The court instructed the jury in the language of section 2317 of the Civil Code.[6] No reference was made to the qualifying language of section 2334 of that code.[7] The court did, however, instruct the jury on equitable estoppel as follows: ''There is a principle of law known as the doctrine of equitable estoppel. In general four things are essential to the application of the doctrine of equitable estoppel: First, the party to be estopped must be apprised of the facts; second, he must intend that his conduct shall be acted upon or must so act that the party asserting the estoppel had a right to believe it was so intended; third, the other party must be ignorant of the true

---

[6]This instruction read: ''Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.''

[7]Section 2334 of the Civil Code provides: ''A principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof.''

state of facts; and fourth, he must rely upon the conduct to his injury."[8]

In addition the court instructed its jury in the language of subdivision 3 of section 1962 of the Code of Civil Procedure.[9]

After the jurors had deliberated for three and one-half hours they requested, "Law on estoppel or instructions on same." The court reread the instruction on equitable estoppel (text and fn. 8, *supra*), the language from section 1962 of the Code of Civil procedure (fn. 9, *supra*), and general instructions it had previously given on the issues and on the manner of considering instructions.[10]

"The California cases hold that, under [Civil Code] sections 2317 and 2334, a plaintiff cannot recover on the basis of ostensible authority without a showing of facts sufficient to raise an estoppel [citations]. As said in *Ernst* v. *Searle*, 218 Cal., *supra*, at page 237, 'its essential elements are representation by the principal, justifiable reliance thereon by the third party, and change of position or injury resulting from such reliance.' (See, also, Rest., Agency, § 265.)" (*Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 451-452 [159 P.2d 958]; and see also *Reusche* v. *California Pac. Title Ins. Co.* (1965) 231 Cal.App.2d 731, 736-737 [42 Cal.Rptr. 262]; *Dickens* v. *Bunker* (1959) 169 Cal.App.2d 383, 388-389 [337 P.2d 489].)

---

[8]This instruction was originally followed by the statement: "It is for you to determine whether or not the doctrine of equitable estoppel applies in plaintiff's favor in this case." After the instructions were first concluded, but before the jury retired, the court, following an objection interposed by defendant in chambers, reread the instruction and followed it with a corrected statement, "It is for you to determine whether or not the doctrine of equitable estoppel applies in favor of plaintiff or defendant or neither in this case.

[9]The instruction reads: "Section 1962 of the Code of Civil Procedure provides in part as follows: 'The following presumption is deemed conclusive. Whenever a party has by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he cannot, in any litigation arising out of such declaration, act or omission be permitted to falsify it.' '' (See Evid. Code (1967) § 623.)

[10]The general instruction on the issues reads: "If you find from all the evidence and the instructions of the Court that there was no consideration for the promissory note in question, you should return a verdict for the defendant. If you find that the promissory note was given without authority and if you find further that the doctrine of equitable estoppel [applies in favor of defendant or] does not apply [in favor of plaintiff], you should return a verdict for the defendant. If you find that there was consideration for the promissory note and if you find further that there was authority for the giving of said note or that the doctrine of equitable estoppel applies [in favor of plaintiff only], you should return a verdict for the plaintiff." As originally given it did not contain the matter in brackets. It was followed by language found in BAJI, Instruction No. 2.

From the foregoing it is clear that ostensible authority for all practical purposes must rest upon the establishment of the same facts as are necessary for establishing equitable estoppel, and no distinction in regard to the legal effect of the evidence is necessary in this case.

 Defendant's objection that plaintiff is barred from showing equitable estoppel because of a failure to plead this theory (see *Greiner* v. *Kirkpatrick* (1952) 109 Cal.App.2d 798, 800 [241 P.2d 564]) is not well taken. In *Lowe* v. *Los Angeles Suburban Gas Co.* (1914) 24 Cal.App. 367 [141 P. 399] a similar objection was made and disposed of as follows: "The first objection is that no estoppel was pleaded by the cross-complaint. At the trial cross-complainant introduced evidence sufficient to establish a *prima facie* case. If she had rested there, and if the defendants here appealing had then introduced evidence showing lack of due authorization, the cross-complainant might then have presented evidence to raise an equitable barrier against defendants' proof of want of authority, and might have done this without pleading an estoppel. The fact that in the trial of this case the plaintiff, after establishing her *prima facie* case, introduced the other evidence in anticipation of the defense of want of authority, does not affect the merits of the case, nor change the rule applicable with respect to pleading. [Citation.]" (24 Cal.App. at p. 376; accord: *Atha* v. *Bockius* (1952) 39 Cal.2d 635, 644-645 [248 P.2d 745]; *Blood* v. *La Serena Land & Water Co., supra,* 113 Cal. 221, 229-230; *Bush* v. *Rogers* (1941) 42 Cal.App.2d 477, 481-482 [109 P.2d 379]; *Davis* v. *Pacific Studios Corp.* (1927) 84 Cal.App. 611, 622-623 [258 P. 440].)

The instruction on equitable estoppel given by the court (see text, fn. 8, *supra*) follows language originally set forth in 10 California Jurisprudence (1923) Estoppel, section 14, page 626, and often quoted and approved. (See *Johnson* v. *Johnson* (1960) 179 Cal.App.2d 326, 330 [3 Cal.Rptr. 575]; *Mercantile Acceptance Corp.* v. *Liles Bros. Motor Co.* (1959) 167 Cal. App.2d 779, 785 [334 P.2d 983]; *Safway Steel Products, Inc.* v. *Lefever* (1953) 117 Cal.App.2d 489, 491 [256 P.2d 32]; *McClain* v. *Bercut-Richards Packing Co.* (1944) 64 Cal.App. 2d 420, 425 [148 P.2d 907]; 18 Cal.Jur.2d, Estoppel, § 5, pp. 406-407; and cf. *Doria* v. *International Union, supra,* 196 Cal. App.2d 22, 40.)

Plaintiff contends that the knowledge and intent of the deceased president in signing the note and the assistant-secretary-office manager in delivering it are chargeable to the corpora-

tion and that it is therefore estopped to assert that the execution and delivery of the note were not authorized. The principles to be applied have recently been outlined as follows: "A corporation, of course, can acquire knowledge only through its officers and agents. Generally, the knowledge of a corporate officer within the scope of his employment is the knowledge of the corporation. (3 Fletcher, Cyclopedia of Corporations (1965 rev.) §§ 789-790; 13 Cal.Jur.2d, Corporations, § 340, p. 112.) 'Where the president of a corporation is also its general manager, having the power to superintend and conduct its business, he has implied authority to make any contract or to do any other act appropriate in the ordinary course of its business. In such case, his powers are greater than he would have as president alone.' (*Memorial Hospital Assn.* v. *Pacific Grape etc. Co.*, 45 Cal.2d 634, 637 [290 P.2d 481, 50 A.L.R.2d 442].) On the other hand, an officer's knowledge is not imputed to the corporation when he has no authority to bind the corporation relative to the fact or matter within his knowledge. (*Moore* v. *Phillips*, 176 Cal.App.2d 702, 709 [1 Cal.Rptr. 508]; 3 Fletcher, *op. cit.*, §§793-796.) 'An agent can never have authority, either actual or ostensible, to do an act which is, and is known or suspected by the person with whom he deals, to be a fraud upon the principal.' (Civ. Code, § 2306.) A corporation is not chargeable with the knowledge of an officer who collaborates with an outsider to defraud it. (*First Nat. Bank* v. *Reed,* 198 Cal. 252, 259 [244 P. 368]; *Bourne* v. *Root,* 125 Cal.App. 461, 464 [13 P.2d 1066]; 3 Fletcher, *op. cit.*, § 826.)" (*People* v. *Parker* (1965) 235 Cal.App.2d 86, 93 [44 Cal.Rptr. 900]; and see *Davis* v. *Pacific Studios Corp., supra,* 84 Cal.App. 611, 623.)

The knowledge necessary to constitute an estoppel must be actual knowledge. (*Benson* v. *Andrews* (1958) 166 Cal.App.2d 44, 52 [332 P.2d 698]; *Primm* v. *Joyce* (1948) 87 Cal.App.2d 288, 291 [196 P.2d 829].) The knowledge acquired by the agent who is acting adversely to his principal will not be attributed to the principal. (*People* v. *Parker, supra,* 235 Cal.App.2d 86, 94-95; *Commercial Lbr. Co.* v. *Ukiah Lbr. Mills, supra,* 94 Cal.App.2d 215, 220-221.)

Plaintiff asserts that even though the knowledge of the interested president cannot be imputed to the corporation, it is chargeable with the knowledge of the assistant secretary.

The secretary or assistant secretary "is the proper officer to affix the corporate seal, and it devolves upon the person denying the execution of the deed to prove that he had

no authority to affix it." (*Underhill* v. *Santa Barbara etc. Co.* (1892) 93 Cal. 300, 314 [28 P. 1049]; and see *Associates Discount Corp.* v. *Tobb Co., Inc., supra,* 241 Cal.App.2d 541, 548.) The secretary, however, has no power to release the corporation's claims, or obligate it for the debts of another. (*Bonner Oil Co.* v. *Pennsylvania Oil Co.* (1907) 150 Cal. 658, 662-663 [89 P. 613]; and *Guernsey* v. *Johnson Organ etc. Co.* (1916) 29 Cal.App. 699, 701 [157 P. 527].) The actions of the president or secretary may estop the corporation from denying obligations incurred in return for benefits received by the corporation. (*Davis* v. *Pacific Studios Corp., supra,* 84 Cal.App. 611, 622-625; *Stevens* v. *Selma Fruit Co., Inc., supra,* 18 Cal.App. 242, 250-256; and see *Lowe* v. *Los Angeles Suburban Gas Co., supra,* 24 Cal.App. 367, 374.)

▮ It would be a strange doctrine, however, that exonerated the corporation of the knowledge of the officer acting adversely to it but charged it with the knowledge of his confederate. Moreover, the evidence reflects that the office manager in this instance was merely acting as messenger for the decedent.

▮ The foregoing, however, does not completely dispose of the question of ostensible authority and estoppel. The evidence outlined above indicates that the corporation had authorized transactions which would indicate that the decedent was clothed with authority to purchase land for the corporation, to take title in individual names, and to bind the corporation to pay for it. Despite some contradictions in plaintiff's testimony,[11] it is susceptible of the interpretation that she believed she was releasing an interest in the property to the corporation.

The corporation was apprised of the fact that it had clothed its president with ostensible authority to issue notes for property conveyed to the corporation, even though title was taken in the name of another. The plaintiff as the party asserting the estoppel could be deemed to have had a right to believe that the transaction was intended to be for the benefit of the corporation and within the foregoing ostensible authority. The evidence permits the finding that plaintiff was ignorant of the true state of facts until the death of her husband. Did she then rely upon the foregoing to her injury?

[11]She testified that the note was a truce offering to settle a disagreement between the decedent and herself; that she was embarrassed that the office manager delivered the note; and that she did not discuss the receipt of the note with the other wives because she felt the circumstances were a little embarrassing.

The property had been acquired by Glenmoor Sales Agency, Inc. from the original owner and was held by it until deeded to the three associates individually in January 1960. According to plaintiff, she had a community property interest in the property and upon her husband's representation that their interest was worth $50,000 she bargained to release her interest for the $25,000 note.

As a practical matter, however, if the transaction had been a conveyance for the benefit of the corporation as she allegedly thought it was, there would have been no injury or damage to her if the note were repudiated because the net worth of the defendant corporation, and her community property interest in her husband's stock would have increased in proportion to the value of the interest in the land which was surrendered to the corporation by the associates and their wives.

If the note had not been forthcoming and she refused to join with the proposed arrangements for the "take-out" loan, she ultimately would have been faced with the problem of averting foreclosure of the construction loan. Continued recalcitrance could only have led to a foreclosure sale or a partition suit. There was no injury or damage to her in merely quitclaiming to her husband for the purpose of securing a loan on the property. The damage or injury would only result at such time as he purported to exercise sole dominion over their interest in the property in derogation of the rights which she ostensibly held at the time of the execution of the quitclaim deed.

The property was not, however, transferred or held for the benefit of the corporation. Nor was it given away or otherwise dissipated by the decedent. At all times during his life and at his death it was held by him in partnership with his two associates. At his death his interest became an asset of his estate and, whether separate or community property, it enhanced the value of the net estate which was ultimately held for the benefit of plaintiff. Even if it were deemed his separate property and she renounced the trust created by the will, the value of this property would still redound to her benefit by relieving the community property of the payment of some legacies and debts.

Under these circumstances plaintiff has failed to show injury or damage which will justify the interposition of equitable principles to estop the defendant corporation from asserting the lack of authority of its former president to obligate it for what was actually his personal commitment to his wife. (See *Johnson* v. *Johnson, supra,* 179 Cal.App.2d 326, 331; and

*McClain* v. *Bercut-Richards Packing Co., supra,* 64 Cal.App.2d 420, 425.) The most that can be said is that the ostensible authority which defendant corporation caused plaintiff to believe her husband to possess led her to place him in a position where he could divest her of her marital rights. Until he did so she suffered no injury or damage and defendant should not be estopped to show its want of authority to execute and deliver the note. She enjoyed the same rights before and after the conveyance unless and until the decedent acted to divest them. Under these circumstances no estoppel will be invoked. (See *Wilson* v. *Red Bluff Daily News* (1965) 237 Cal.App.2d 87, 92 [46 Cal.Rptr. 591].)

Unless the giving and the acceptance of the unauthorized note precluded plaintiff from asserting her marital rights in the property which she conveyed when she discovered that the note was unauthorized and was repudiated by the corporation, there is no warrant for applying equitable estoppel. (See *Bear Creek Co.* v. *James* (1953) 115 Cal.App.2d 725, 733 [252 P.2d 723].)

The following is pertinent in answer to plaintiff's assertion that defendant corporation should be estopped to deny the validity of the note. "Respondent's contention ignores the remedial limitations of the doctrine of estoppel. ▮ The doctrine acts defensively only. It operates to prevent one from taking an unfair advantage of another but not to give an unfair advantage to one seeking to invoke the doctrine. (*Varela* v. *Board of Police Commissioners,* 107 Cal.App.2d 816, 822 [238 P.2d 62]; *Little* v. *Union Oil Co.,* 73 Cal.App. 612, 621 [238 P. 1066].) Or as stated in 31 Corpus Juris Secundum, Estoppel, section 152, at page 440: ▮ 'The doctrine of estoppel does not extend to matters affecting the remedy only, which are foreign to, and disconnected from, the contract or the character in which the parties entered into it; and when applied it should be only to the extent of protecting the party who has been misled against the loss actually occasioned thereby. . . .' " (*Peskin* v. *Phinney* (1960) 182 Cal.App.2d 632, 636 [6 Cal.Rptr. 389]; and in addition to the cases cited see *Bear Creek Co.* v. *James, supra,* 115 Cal.App.2d 725, 734.)

▮ There is left for consideration defendant's contention that plaintiff is estopped to make claim on the note. The record reflects that she failed to demand interest or payment of the note upon its maturity January 21, 1961, nor did she demand interest on January 21, 1962. In fact she never made any claim under the note until her husband was deceased, the

representatives of his estate had been appointed, and the defendant corporation had advised them of the exercise of an option to purchase his stock and tendered a check as a down payment therefor.

Plaintiff explained that she withheld any demand under the note during the period she believed it would not outlaw because her husband was always after more money for business purposes and even wanted to borrow on their home. It further appeared that the director and secretary, who was named and appointed as a coexecutor of the decedent's will, found a carbon copy of the note among the decedent's personal papers after his death but only learned that it had been signed when plaintiff presented it later.

Defendant asserts that plaintiff's failure to present the note at an earlier time led the corporation to make its bid for the decedent's stock in ignorance of this liability. The net worth of the corporation, and the resulting appraised value of the stock and the price paid therefor were thereby unwarrantedly enhanced. Plaintiff should therefore be estopped to now assert her claim because of her silence and lack of diligence in presenting it. (See *Atha* v. *Bockius, supra,* 39 Cal.2d 635, 645-646; *Zorich* v. *Petroff* (1957) 152 Cal.App.2d 806, 812-813 [313 P.2d 118]; and *Bush* v. *Rogers, supra,* 42 Cal.App.2d 477, 480-481.)

The evidence is not clear as to the manner in which decedent's stock in defendant corporation was appraised.[12] The trial court was aware of the problem and over plaintiff's objection caused the following provision to be inserted in the judgment: "Judgment is entered without prejudice to the rights of defendant or its agents to petition probate court in the Estate of James R. Meyer, deceased, found in Alameda County Probate Action No. 157608 for relief on alleged ground of double payment."

If plaintiff had asserted her claim when the note was due during decedent's lifetime, the corporation could have ratified

---

[12]The executors were appointed and qualified March 19, 1962. On September 10, 1963 a partial inventory and appraisement was filed reflecting that the decedent owned 197 41/47 shares of defendant corporation, appraised at $116,312.37 as his separate property. A corrected appraisal filed November 14, 1963 designated the property as separate and community, and the order entered December 3, 1963 on plaintiff's petition declared it to be community property. The executors' first account filed February 26, 1964 reports that on May 15, 1962, $10,000 was received from defendant corporation as an advance on the purchase of stock. On July 12, 1962, an additional $15,000 was so paid and received, and on June 12, 1963, $4,815.62 was received as interest due May 31, 1963 on a $106,312.31 note, of defendant corporation. The account further reflects that the executors

the transaction and claimed a one-sixth interest in the apartment project, or in the absence of injury or damage, disaffirmed it. In the latter event, the consideration which plaintiff received having failed she would have the right to reclaim her interest in the property, or seek recovery on her husband's warranty of authority. (Civ. Code, § 2342.) The evidence shows that the decedent did not dispose of either his own interest, or the interest he purportedly acquired from plaintiff, other than to hypothecate it for a new loan. In the absence of evidence to the contrary it will be assumed that the proceeds thereof were utilized to discharge the construction loan against the property, or otherwise disposed of in the management of the enterprises which constituted the community property of the parties.[13]

It is unnecessary to determine whether or not the foregoing estop plaintiff from recovery against defendant on the note. It does demonstrate the inherent inequity in permitting plaintiff to recover from the corporation while she at the same time enjoys the enhancement in decedent's estate from the value of the property she allegedly conveyed away, and the value of decedent's stock in defendant corporation unimpaired by any liability for her asserted claim. Her unilateral acts in securing an order which declared that the decedent's interest in the apartment was his separate property and in electing to take under the decedent's will do not obscure the fact that at the time of the decedent's death the defendant corporation had done nothing to prevent her from asserting against her husband, or his estate, the same rights in that property which she had prior to the time she signed the quitclaim deed.

In short, under these circumstances equity should not intervene to preclude defendant corporation from asserting the lack of actual authority of decedent to bind it. If there are tax considerations or other reasons which impel plaintiff to either pursue her rights in the property, or such rights as she may have on decedent's implied warranty of authority (Civ. Code,

held such a note dated May 2, 1962 payable in installments of $10,000 annually with interest at 5 percent, upon which (November 19, 1963) there was a balance due of $91,312.31, and that the stock was held to secure the payment of the note. The instant suit was not filed until March 16, 1964 and judgment was entered November 2, 1964.

[13]The plaintiff's testimony indicates that she was not opposed to having the property encumbered with a loan, that she would join in signing for a loan as she had done in the past, but that she objected to the ostensible release of all of her interest as called for by the recitals of the quitclaim deed.

§ 2342), she has not been delayed in asserting them by any act or omission of the defendant corporation but only by her own lack of diligence.

This is not a case where one of two innocent parties must suffer a loss occasioned by the act of a third, and the party responsible for permitting the third party to so act must bear it. (See Civ. Code, § 3543; *Mercantile Acceptance Corp.* v. *Liles Bros. Motor Co., supra,* 167 Cal.App.2d 779, 785.) There is no actual loss to plaintiff, and to hold defendant liable under the peculiar circumstances of this case would be to unjustly enrich her. (See *Bear Creek Co.* v. *James, supra,* 115 Cal.App.2d 725, 734; *Little* v. *Union Oil Co.* (1925) 73 Cal. App. 612, 620-621 [238 P. 1066].)

The judgment of the lower court saddles the defendant corporation with the payment of an obligation, which if enforcible at all, should be borne by the decedent who issued the note. The time to file claims against his estate expired October 4, 1962, long before the present suit was commenced. Defendant, if it paid, could not seek recourse there. The trial court suggested an adjustment in the purchase price of the note, but that could only be accomplished in relation to the proportion of the claim represented by the shares involved. The defendant should be exonerated, and plaintiff should be left to her recourse, if any, against the decedent's estate.

The trial court erred in refusing defendant's instruction for a directed verdict and in denying its motion for judgment notwithstanding the verdict. The order and judgment appealed from are reversed with instructions to enter judgment for defendant.

Sullivan, P. J., and Molinari, J., concurred.

A petition for a rehearing was denied December 7, 1966, and the following opinion was then rendered:

THE COURT.—In her petition for rehearing plaintiff directs attention to an alleged conflict between the conclusion herein expressed that each fact of which a corporate seal is prima facie evidence (Corp. Code, § 833) is similar to a mere inference which is dispelled by evidence of the nonexistence of the fact which is clear, positive, uncontradicted and of such a nature that it cannot rationally be disbelieved (see *Leonard* v. *Watsonville Community Hospital* (1956) 47 Cal.2d 509, 515 [305 P.2d 36]), and a prior statement by this court to the effect that prima facie evidence is presumptive in charac-

ter. (*Hansen* v. *G & G Trucking Co.* (1965) 236 Cal.App.2d 481, 492 [46 Cal.Rptr. 186].)[1]

The language in question was written in connection with the construction of the provisions of section 869a of the Civil Code which refers to the effect of a conveyance from a person who holds an interest as "trustee" without any indication or naming of a beneficiary. The statute provides that such conveyance "shall prima facie affect" the interest held "according to the tenor of such instrument." Further provisions define the circumstances under which a presumption, which is in the first part of the statute, that the person holds free from any trust, becomes conclusive. Immediately preceding the language to which plaintiff alludes, this court stated: "It is apparent that the Legislature used the words 'shall prima facie affect' in the sense of a rebuttable presumption since the language in the very next sentence refers to the terminology of the preceding clause as a 'presumption.'"

The foregoing, therefore, uses the term prima facie in the sense that a prima facie presumption is the equivalent of a rebuttable presumption and properly concludes that it will support a finding consistent with it in the face of conflicting evidence produced by other than the party relying on the presumption. (*Hansen* v. *G & G Trucking Co., supra,* 236 Cal.App.2d at pp. 499-500 and cases cited.) *People* v. *Fitzgerald* (1936) 14 Cal.App.2d 180 [58 P.2d 718] similarly dealt with a statute which expressly created a prima facie presumption. (Stats. 1887, ch. 95, § 6, pp. 110-111.) *Maganini* v. *Quinn* (1950) 99 Cal.App.2d 1 [221 P.2d 241] considered the provisions of section 6714 of the Revenue and Taxation Code, and *Frank Meline Co.* v. *Kleinberger* (1930) 108 Cal.App. 60 [290 P. 1042] considered the prima facie case which had been established on a prior appeal in the same case. Each states that a prima facie *case* is one which is received or continues until the contrary is shown. The latter decision indicates that a prima facie *case* will create a conflict with the rebutting evidence. This, however, is not the same

---

[1]"Moreover, the term 'prima facie evidence' ('prima facie' being a term which relates to evidence—see Code Civ. Proc., § 1833, defining 'prima facie evidence') is presumptive in character, there being no difference in law between the quantum and character of evidence necessary to overcome a 'prima facie' showing and that necessary to overcome a presumption. (See *People* v. *Fitzgerald,* 14 Cal.App.2d 180, 206-207 [58 P.2d 718]; Code Civ. Proc., § 1961; and see *Maganini* v. *Quinn,* 99 Cal.App.2d 1, 8 [221 P.2d 241]; *Frank Meline Co.* v. *Kleinberger,* 108 Cal.App. 60, 62-63 [290 P. 1042].)" (*Hansen* v. *G & G Trucking Co.* (1965) 236 Cal. App.2d 481, 492 [46 Cal.Rptr. 186].)

as stating, as has been done herein, that a fact which is only established "at first view" by proof of another fact may be rejected when the only direct evidence on the subject of the existence of the fact demonstrates its nonexistence.

The statement in *Hansen* that "the term 'prima facie evidence' . . . is presumptive in character" when viewed in its context is therefore not inconsistent with the distinction applied herein and noted in *Leonard* v. *Watsonville Community Hospital,* wherein it is stated: "Generally speaking, it may be said that a presumption is dispelled as a matter of law only when a fact which is wholly irreconcilable with it is proved by the uncontradicted testimony of *the party relying on it or of such party's own witnesses.* [Citations.] . . . On the other hand, as we have seen [see quotation from *Leonard* in body of opinion], an *inference* can be dispelled as a matter of law by evidence produced by *either* party." (47 Cal.2d 509 at pp. 517-518.) In short, an inference is created by the provisions of section 833 of the Corporations Code and section 1833 of the Code of Civil Procedure, whereas presumptions, both rebuttable and conclusive, are created by the provisions of section 869a of the Civil Code.

Section 1833 of the Code of Civil Procedure, as distinguished from section 1961, expressly provides for a form of evidence which is to suffice for proof of another fact in lieu of direct proof, and expressly provides by example for the rejection of that fact upon proof of the true fact. The latter section refers to a deduction which is to be made from particular facts, and which may be held to persist until the fact deduced or the facts upon which it rests are rejected by the trier of fact.

Plaintiff further insists that the evidence, some of which is noted in the original opinion, permits a finding that the conveyances from Glenmoor Sales Agency, Inc. and the respective wives to the three husbands were made prior to the construction of the apartment house. From this premise it is asserted that the defendant corporation, which she seeks to charge as the maker of the note, received consideration in the form of a building contract which ensued after, not before, title passed and the loan was secured.

If it be assumed that the continuity of events was as now contended by plaintiff some of the proceeds of the loan which was obtained following the grant from plaintiff may have been paid over to the corporation. The fact remains, however, that there is nothing to show that the corporation bargained for this incidental benefit. If it did in fact receive the construc-

tion contract and partial payment thereon following the conveyance and loan, there is no basis from those facts alone to subject it to a liability which it never agreed to assume.

Respondent's petition for a hearing by the Supreme Court was denied January 4, 1967. Sullivan, J., did not participate therein.